**Kathryn LEACH, et al., Plaintiffs,**

v.

**NEWPORT YELLOW CAB, INC., et al., Defendants.**

**No. C–3–82–077.**

United States District Court,
S.D. Ohio, W.D.

Dec. 9, 1985.

Kenneth G. Rush, Springfield, Ohio, Al J. Cone and Melinda Penney Gamot, West Palm Beach, Fla., for plaintiffs.

David P. Faulkner, Cincinnati, Ohio, for defendants Newport Yellow Cab, Hay and DeMoss.

Gary D. Bullock and Carl J. Stitch, Jr., Cincinnati, Ohio, for defendant Conrail.

RICE, District Judge.

This case is presently before the Court on Plaintiffs' Motion for Reconsideration (Doc. # 57) of this Court's Decision Sustaining in Part and Overruling in Part Defendant Conrail's Motion for Summary Judg-ment (Doc. # 52) (hereinafter the "August 22 Decision), and on Defendant Conrail's Renewed Motion for Summary Judgment (Doc. # 52A). The facts underlying this action are set forth in the Court's Decision of August 22, 1985 (Doc. # 52) and need not be repeated here. For the reasons set forth below, Plaintiffs' Motion for Recon-sideration (Doc. # 57) is overruled, and De-fendant's Renewed Motion for Summary Judgment (Doc. # 52A) is sustained.

## I. *Plaintiff's Motion for Reconsideration.*

Plaintiffs' Motion for Reconsidera-tion (Doc. # 57) asks the Court to overturn its August 22 Decision (Doc. # 52) granting summary judgment to the Defendant Con-rail on the issue of whether it could be held liable for Plaintiffs' injuries under the doc-trine of respondeat superior. In that deci-sion, this Court found the question of whether Newport Yellow Cab was Conrail's servant rather than its independent con-tractor to be, under the particular circum-stances of this action, a question of law for the Court. Further, in examining the con-tract language in this case, the Court held that the contract required the conclusion that Newport Yellow Cab was an indepen-dent contractor of Conrail. On this basis, the Court held that Conrail could not be held liable under a theory of respondeat superior for the alleged negligence of De-fendant Newport Yellow Cab or its employ-ee, Charles DeMoss.

Plaintiffs' Memorandum of Law in Sup-port of its Motion for Reconsideration (Doc. # 58) advances two grounds for overturn-ing this Court's previous decision. First, Plaintiffs argue that a jury should resolve the issue of when the degree of control by the master is sufficient to support a finding that a master/servant relationship exists. Second, Plaintiffs argue that a jury should decide whether conduct is within the "scope of employment" in this particular case.

Plaintiffs support their first argument by citing *Marshall v. Aaron*, 15 Ohio St.3d 48, 472 N.E.2d 335, 337 (1984), for the proposition that "the right to control the

means or manner of doing work" is the central issue in distinguishing master-servant from independent contractor relationships, and that where reasonable minds could differ, summary judgment on this issue is precluded. *Marshall v. Aaron,* however, does not set any new legal standards regarding when a right to control exists. Rather, the Ohio Supreme Court there relies on *Councell v. Douglas,* 163 Ohio St. 292, 126 N.E.2d 597 (1955), just as did this Court in its August 22 Decision. *Compare Marshall v. Aaron,* 15 Ohio St.3d at 49, 472 N.E.2d at 337, *with* Doc. # 52 at 8.

However, *Marshall v. Aaron* does indicate that the Court must consider a wide range of factors in determining whether this requisite right to control exists. 15 Ohio St.3d at 49–50, 472 N.E.2d at 337–38. As noted in the Court's last Decision (Doc. # 52 at 10), *Industrial Commission of Ohio v. Laird,* 126 Ohio St. 617, 186 N.E. 718 (1933), held that where a written contract stating the terms of employment exists, the issue of right of control is a matter of law for the Court. However, several recent decisions have indicated, without explicitly overruling *Laird,* that a written contract is not determinative of the right to control issue, and that such a determination must be based upon all of the facts of the particular case. *See N & G Construction, Inc. v. Lindley,* 56 Ohio St.2d 415, 384 N.E.2d 704 (1978); *Duke v. Sany Metal Products Co.,* 31 Ohio App.2d 78, 286 N.E.2d 324 (1972). *See also Prudential Insurance Co. v. Eslick,* 586 F.Supp. 763, 765 (S.D.Ohio 1984) ("While the contract between the two entities characterizes Eslick as an independent contractor, Prudential now seeks a legal determination that Eslick was in fact its agent. Under Ohio law, the nature of an employment relationship such as agency or an independent contractor arrangement must be determined through a comprehensive factual analysis."). Nevertheless, even if the Court looks to the entire record presented in this case, no genuine issue as to material fact exists regarding Conrail's lack of a right to control Newport Yellow Cab.

The relevant record in this action, beyond the contract between Conrail and Newport Yellow Cab, consists of the depositions of Mr. Hay, Newport's owner, and of Mr. DeMoss, the cab driver at the time of the accident, and a collection of letters from Conrail to Newport. (Doc. # 48, Exh. A). None of these items contains any evidence that raises a genuine issue as to any material facts that would support a finding that Conrail had a right of control over Newport. The first letter Plaintiffs have attached to their Memorandum Contra Defendant's Motion for Summary Judgment (Doc. # 48) is merely a solicitation for bids that indicates any contractor bidding must be able to provide twenty-four hour a day, seven day a week service with competent drivers and within the laws of Ohio, Kentucky and Indiana. It in no way demands a right of control over either the drivers or vehicles in question. The other letters are complaints regarding delays in service or the condition of the vehicles used. None of these letters is any more than a demand that Newport comply with its contractual obligations. If the contract does not create a right of control, demands made for performance of obligations under the contract cannot create a right of control.

Likewise, the depositions of Mr. Hay and Mr. DeMoss give no indication that Conrail hold a *de facto* right of control over Newport. Plaintiffs' have not directed the Court to any portion of these depositions that would support their contention that a genuine issue exists as to Conrail's right of control over Newport. Nor can the Court, having scrutinized these depositions in their entireties, find any evidence therein that could create a genuine issue as to a material fact regarding the right of control.

In sum, even accepting *arguendo* that Ohio law requires this Court to look beyond the written contract and examine the substantive relationship between Conrail and Newport, the Court can find no evidence that raises any genuine issue of fact regarding the right to control. The letters and depositions in the record no more show

a right of control of Conrail over Newport than did the contract.

Furthermore, the Ohio Supreme Court's holding that summary judgment was inappropriate in *Marshall v. Aaron* was based on the particular facts of that case, and not a blanket prohibition of summary judgment on the issue of right of control. Therefore, because this Court's examination of the contract between Conrail and Newport Yellow Cab and the substantive relationship stemming therefrom fails to uncover any genuine issues as to material facts, there is no basis for the Court's reversing its previous finding that Newport was an independent contractor in respect to its employment by Conrail.

Plaintiff's second argument, that a jury should decide whether Newport Yellow Cab was acting within the scope of its employment when the accident in question occurred, is irrelevant given the Court's determination that Newport was an independent contractor with Conrail. The scope of employment issue would only be relevant if Newport were found to have been a servant of Conrail.

Accordingly, because Plaintiffs' Motion for Reconsideration raises no new issues of fact or law relevant to the Court's August 22 Decision, this motion is overruled.

## II. *Defendant Conrail's Renewed Motion for Summary Judgment.*

■ Defendant Conrail's Renewed Motion for Summary Judgment (Doc. # 52A) asks the Court to grant summary judgment

in its favor on the issue of whether liability for negligent hire can be found even though the accident occurred outside of the scope of the employment relationship between Conrail and Newport Yellow Cab.[1] Conrail argues that because this Court has found that Newport Yellow Cab was acting outside of its employment at the time of the injury in question, Conrail cannot be held liable under the negligent hire doctrine for those injuries. While not specifically agreeing with the reasoning of Conrail's argument, the Court does concur in its conclusion, and therefore sustains this Motion for Summary Judgment.

Conrail's argument for summary judgment is based upon its theory that the negligent hire doctrine requires that "the plaintiff must establish that the relationship of employer and independent contractor existed...." Doc. # 52A at 5–6 (quoting 78 A.L.R.3d 910, 919 (1977)). Conrail construes this to require that at the time of the injury the independent contractor must have been acting within the scope of employment in order for the employer to be liable. Essentially, Conrail would add a respondeat superior scope of employment test as an element of the negligent hiring doctrine. Conrail, however, cites no case law in support of this requirement, nor can this Court find any cases in which this specific problem is addressed.[2] Rather, Conrail supports its argument by analogizing negligent hire to respondeat superior and by suggesting that without such a

---

**1.** The Court notes, in passing, that it cannot agree with Conrail's assertion that it (Conrail) did "address" this issue in its earlier Motion for Summary Judgment (Doc. # 44). Conrail's assertion that "Before even negligent selection may result in liability, there must be a negligent act committed during the performance of the contract," made without citation of authority or elaboration of its underlying reasoning, may raise this issue, but in this Court's view such an assertion does not "address" it.

**2.** The Court has, however, found at least one commentator that disagrees with Conrail's interpretation:

Although the plaintiff must prove the fact of employment, he need not prove that the em-

ployee was acting within the scope of his employment at the time of the injury caused by the employee's incompetence. If the act of the employee was not, or may not have been, within the scope of his employment, application of the negligent hiring theory allows the injured person to establish the liability of the employer when no liability would exist otherwise.

Comment, *Negligent Hiring and Negligent Entrustment: The Case Against Exclusion,* 52 Or.L. Rev. 296, 298 (1973). However, the authority cited in support of conclusion, *Tuite v. Union Pac. Stages, Inc.,* 204 Or. 565, 576, 284 P.2d 333, 339 (1955), does not prove direct support therefor.

requirement, there would be no limitation on these claims.

However, because this Court finds that there is no genuine issue as to material facts regarding proximate causation of Plaintiffs' injuries, the Court will not determine whether a separate requirement that the activity within the scope of employment should be found in the negligent hire doctrine.[3]

Before turning to the issue of proximate cause, the Court notes: "The summary judgment standard in this Circuit is a stringent one. Fed.R.Civ.Pro. 56(c) permits the Court to grant summary judgment only when there is no genuine issue of material fact and when the moving party is entitled to judgment as a matter of law." *Snider v. Creasy*, 548 F.Supp. 601, 602 (S.D.Ohio 1982). Thus, if a genuine issue about any material fact regarding proximate causation is found, summary judgment cannot be granted.

Proximate causation is a necessary element of a negligence action under Ohio law. *See Moncol v. Board of Ed. of North Royalton School Dist.*, 55 Ohio St.2d 72, 378 N.E.2d 155, 158 (1978) ("When determining the presence or absence of negligent conduct it is necessary to examine (1) the existence of a duty owed to the plaintiffs; (2) a breach of that duty; and (3) proximate causation."); *Bennison v. Stillpass Transit Co.*, 5 Ohio St.2d 122, 214 N.E.2d 213 (1966); *Baier v. Cleveland Ry. Co.*, 132 Ohio St. 388, 391, 8 N.E.2d 1 (1937). In *Ross v. Nutt*, the Ohio Supreme Court defined proximate causation: "For an act to be the proximate cause of an injury, it must appear that the injury was the natural and probable consequence of such act." 177 Ohio St. 113, 114, 203

N.E.2d 118, 120 (1964) (citing *Foss-Schneider Brewing Co. v. Ulland*, 97 Ohio St. 210, 119 N.E. 454 (1918)). The court elaborated the requirements of this definition:

> To find that an injury was the natural and probable consequence of an act, it must appear that the injury complained of could have been foreseen or reasonably anticipated from the alleged negligent act. As is said in *Miller v. Baltimore & Ohio Southwestern Rd. Co.*, 78 Ohio St. 309, at page 325, 85 N.E. 499, at page 504, 18 L.R.A., N.S., 949, "the rule is elementary that a defendant in an action for negligence can be held to respond in damages only for the immediate and proximate result of the negligent act complained of, and in determining what is direct or proximate cause the rule requires that the injury sustained shall be the natural and probable consequence of the negligence alleged; that is, such consequence as under the surrounding circumstances of the particular case might, and should have been foreseen or anticipated by the wrongdoer as likely to follow his negligent act."

*Id.* Thus, in deciding issues of proximate causation, the courts must determine the relationship of the alleged act of negligence to the alleged injury.

In the present action, the alleged act of negligence was Conrail's hiring of Newport Yellow Cab. The Court already has found that "the accident occurred while the driver was driving his own vehicle after completing the deliveries on behalf of his employer and where the driver was under no further obligation to his employer." Doc. # 52 at 6.[4] Given this finding of fact, no genuine

---

3. Essentially, the Court believes that the requirement of proximate causation does provide a limitation upon negligent hiring claims sufficient to prevent overly broad liability. It is unclear to the Court, however, whether the proximate causation limitation would bar all claims based upon acts occurring outside the scope of employment.

4. Plaintiffs' contention that DeMoss' cab was radio equipped and that he therefore could have been called at any time to transport Conrail

employees (Doc. # 58 at 3) is irrelevant for two reasons. First, it is undisputed that DeMoss was out of the range of radio contact on this trip. DeMoss Deposition at 263–70. Second, and more importantly, DeMoss was not called upon after dropping off the Conrail employees in Bellefontaine.

Furthermore, Plaintiffs' claim that, "On the return trip from Bellefontaine, he was available solely for CONRAIL assignments, and not for hire to the general public" (Doc. # 58 at 3),

issue exists as to the question of whether Plaintiff's injury was "the natural and probable consequence of the negligence alleged." Since Conrail's alleged negligence was only in the hiring of Newport, an injury occurring when "the driver was under no further obligation to" Conrail could not "have been foreseen or reasonably anticipated from the alleged negligent act." No reading of the facts presented in this case could raise an inference that such an injury, occurring outside of the contractual scope of employment, was caused by the alleged negligent hiring.

Furthermore, the Court notes that Plaintiffs' arguments in their Motion for Reconsideration (Doc. # 57) regarding scope of employment do not effect the Court's previous finding that the undisputed facts show that at the time of the accident Newport Yellow Cab was "under no further obligation to" Conrail. Plaintiffs cite *Posin v. A.B.C. Motor Court Hotel, Inc.*, 45 Ohio St.2d 271, 280, 344 N.E.2d 334, 339 (1976), and *Calhoun v. Middletown Coca-Cola Bottling Co.*, 43 Ohio App.2d 10, 13, 332 N.E.2d 73, 76 (1974), for the proposition that scope of employment is an issue of fact for the jury and that summary judgment on this issue is thus precluded by Ohio law. The Court does not dispute that scope of employment is a question of fact. However, when all of the material facts relevant to an issue of fact are undisputed, summary judgment is appropriate. *See Bouldis v. U.S. Suzuki Motor Corp.*, 711 F.2d 1319 (6th Cir.1983); *Tee-Pak, Inc. v. St. Regis Paper Co.*, 491 F.2d 1193, 1195 (6th Cir.1974); *Snider v. Creasy*, 548 F.Supp. 601, 602 (S.D.Ohio 1982). As this Court noted in its last Decision: "Herein there is simply no genuine issue of fact as to whether the accident occurred after DeMoss had dropped off the Conrail employees that he was transporting and while DeMoss was on his return trip." Doc. # 52 at 6–7). Thus, "the uncontradicted evidence effectively shows that at the time of

the collision, he was engaged in no business or service of [Conrail], but was acting exclusively in his own behalf and for his own purposes." *Kirtland v. Interstate Motor Freight System*, 53 Ohio App. 459, 461–62, 5 N.E.2d 707 (1936).

Therefore, because the Court finds the uncontroverted facts in this action show that Conrail's alleged negligent hiring of Newport Yellow Cab could not have been the proximate cause of Plaintiffs' injuries, Conrail's Renewed Motion for Summary Judgment is sustained. Since no claims in this action remain against it, Conrail is dismissed as a Defendant herein, and this action will proceed between Plaintiffs and Defendant Newport Yellow Cab.

---

ignores the reason for this limitation. DeMoss could not pick up other fares not because of the contract with Conrail, but because of Ohio state law. DeMoss Deposition at 74. DeMoss could have picked up fares from other companies that had contracts with Newport Yellow Cab. *Id.* at 75.