**CARNEGIE CAPITAL MANAGEMENT COMPANY, Appellee,**

v.

**LIMBACH, Tax Commr., Appellant.**

[Cite as *Carnegie Cap. Mgmt. Co. v. Limbach* (1991), 77 Ohio App.3d 74.]

Court of Appeals of Ohio,
Cuyahoga County.

No. 59005.

Decided Sept. 9, 1991.

*Squire, Sanders & Dempsey, Eric M. Oakley, William H. Conner* and *Robert J. Eidnier*, for appellee.

*Lee I. Fisher*, Attorney General, and *James C. Sauer*, Assistant Attorney General, for appellant.

NAHRA, Presiding Judge.

This appeal arises from the decision of the Board of Tax Appeals ("BTA") reversing the Tax Commissioner's determination that Carnegie Capital Management Co. ("Carnegie"), appellee, was not entitled to a refund of corporation franchise taxes for the tax years 1982, 1983 and 1984.

During the period January 1, 1981 through January 1, 1984, Carnegie, an Ohio corporation, maintained an office in Cleveland, Ohio, from which it engaged in the business of investing and reinvesting the assets of four registered investment companies (referred to as "investment companies" or "companies"). The four companies were mutual funds: Carnegie Liquid Capital Income Trust, Carnegie Government Securities Trust, Carnegie Tax–Free Trust, and Carnegie Government Securities Trust Intermediate Term Series.

At the hearing before the BTA, David E. Karam, the controller of Carnegie during the period in question, testified that Carnegie's only business was to provide management of the investment companies. Karam's testimony detailed the precise functions that Carnegie performed on behalf of the investment companies. Each of the investment companies was a separate corporation, the stock of which was owned by individuals or entities seeking invest-

ment in the particular type of security owned by the investment company. When an investor-shareholder sought to withdraw all or part of his investment, he did so by requesting that the investment company redeem the appropriate portion of his shares.

Karam testified that each morning Carnegie was informed by the investment companies' transfer agent, The Bank of New York, as to the amount of cash available for investment or the amount needed for shareholder redemption for each of the investment companies. Carnegie used this information in determining the amount of securities to buy and sell that day for each investment company. Carnegie's securities traders, Roy Wallace and Charlene Crimaldi, communicated with various dealers such as Goldman Sachs Co., First Boston Corp., and Merrill Lynch, Inc. who were offering securities for sale. These dealers acted as principals in selling securities to or buying securities from Carnegie. The dealers did not earn commissions on the transactions and made money by selling securities at a price greater than cost.

If Wallace or Crimaldi decided to buy a particular security for an investment company, he or she would immediately enter into an oral contract of purchase with the dealer by telephone. A confirmation slip would be sent by the dealer to Carnegie. A similar procedure took place when Carnegie sold securities. Carnegie instructed the dealer from whom they purchased the securities to deliver the securities to The Bank of New York, which acted as custodian for the investment companies. In all instances, The Bank of New York acted at Carnegie's direction.

Carnegie filed an application for a refund of corporate franchise taxes paid in 1982, 1983 and 1984. Carnegie maintained that it was a dealer in intangibles and thus was exempt from the franchise tax under R.C. 5733.09. The Tax Commissioner denied Carnegie's application for a refund. Carnegie filed a notice of appeal to the BTA and a hearing was held. The BTA reversed the determination of the Tax Commissioner and found that Carnegie was a dealer in intangibles under R.C. 5725.01(B) and thus was exempt from the franchise tax under R.C. 5733.09. As a result, the BTA ordered that Carnegie was entitled to a refund for the pertinent period. The Tax Commissioner's timely appeal follows.

Appellant's four assignments of error are interrelated and shall be examined together. They state:

"1. The Board of Tax Appeals erred in determining that the appellee was a 'dealer in intangibles' within the meaning of R.C. 5725.01(B).

"2. The board's decision is unreasonable and unlawful insofar as it found that the appellee was engaged in the business of buying and selling invest-

ment securities as an agent for others so as to qualify as a dealer in intangibles under R.C. 5725.01(B).

"3. The board's decision is unreasonable and unlawful in its determination that the appellee was exempt from the corporation franchise tax pursuant to R.C. 5733.09 and that the appellee was entitled to a refund of all corporation franchise taxes paid for tax years 1982, 1983, and 1984, together with interest on such payments.

"4. The decision of the Board of Tax Appeals is unreasonable and unlawful insofar as it reversed the final order of the Tax Commissioner."

■ The chief issue in this case is whether the BTA acted reasonably and lawfully in determining that Carnegie was a "dealer in intangibles" during the pertinent period and thus not subject to the corporation franchise tax.

Dealers in intangibles are exempt from the corporation franchise tax under R.C. 5733.09 which states:

"(A) An incorporated company, whether foreign or domestic, owning and operating a public utility in this state, and as such required by law to file reports with the tax commissioner and to pay an excise tax upon its gross receipts or gross earnings, and insurance, fraternal, beneficial, bond investment, and other corporations required by law to file annual reports with the superintendent of insurance and *dealers in intangibles, the shares of which or the capital or ownership in capital employed by such dealer is subject to the taxes imposed by section 5707.03* of the Revised Code, shall *not be subject to this chapter.*" (Emphasis added.)

R.C. 5725.01(B), which defines a "dealer in intangibles," states in pertinent part:

" 'Dealer in intangibles' includes every person who keeps an office or other place of business in this state and engages at such office or other place in the business of lending money, or discounting, buying, or selling bills of exchange, drafts, acceptances, notes, mortgages, or other evidences of indebtedness, *or of buying or selling bonds, stocks, or other investment securities, whether on his own account with a view to profit, or as agent* or broker *for others, with a view to profit* or personal earnings. * * *" (Emphasis added.)

The word "person" includes firms, associations, and corporations as used in R.C. Title 57. R.C. 5701.01. A taxpayer who erroneously paid the corporation franchise tax is entitled to a refund of such taxes under R.C. 5733.12.

R.C. 5717.04 provides that this court's review of the BTA's ruling is limited to a determination of whether the BTA's decision was reasonable and lawful. *PPG Industries v. Kosydar* (1981), 65 Ohio St.2d 80, 19 O.O.3d 268, 417 N.E.2d 1385. The court of appeals is bound by the record that was before the

BTA and may not substitute its judgment for that of the board. *Olt v. Porterfield* (1969), 19 Ohio App.2d 211, 48 O.O.2d 343, 250 N.E.2d 764. In addition, reviewing courts will not overrule findings of fact of the BTA that are based upon sufficient probative evidence. *Hawthorn Mellody, Inc. v. Lindley* (1981), 65 Ohio St.2d 47, 19 O.O.3d 234, 417 N.E.2d 1257; *Alcoa v. Kosydar* (1978), 54 Ohio St.2d 477, 8 O.O.3d 459, 377 N.E.2d 785. Moreover, the BTA has wide discretion in determining the weight to be given to evidence and the credibility of witnesses which come before it. *Cardinal Federal S. & L. Assn. v. Bd. of Revision* (1975), 44 Ohio St.2d 13, 73 O.O.2d 83, 336 N.E.2d 433, paragraph three of the syllabus.

The Tax Commissioner contends that the BTA erred when it found that Carnegie was a dealer in intangibles. The Tax Commissioner asserts that the record lacked evidence of an agency relationship between Carnegie and the investment companies insofar as Carnegie failed to introduce into evidence written agreements to establish such relationship. She also argues that Carnegie made its profit by assessing a management fee and not by taking a commission out of each sale of securities. As a result, Carnegie did not fall within the statutory definition of a "dealer in intangibles." Finally, the Tax Commissioner maintains that the BTA disregarded the rules of statutory construction by not strictly construing R.C. 5725.01 *et seq.* against the imposition of the dealer in intangibles' tax on Carnegie and by not strictly construing R.C. 5733.09 against the exemption from the corporation franchise tax. Such arguments lack merit.

█ We are unable to conclude that the BTA's decision is unreasonable or unlawful. Our review of the record reveals that Carnegie was engaged in the business of buying and selling investment securities as the agent for the investment companies with a view to profit for both itself and the investment companies. As a result, Carnegie was a dealer in intangibles under the plain and unambiguous statutory language of R.C. 5725.01(B). The testimony of Karam, the sole witness in the hearing before the BTA, established that Carnegie purchased or sold investment securities as agent for the investment companies. The Carnegie traders implemented their investment decisions for the investment companies by buying or selling securities with various dealers. Karam's testimony reveals a course of conduct between Carnegie and its investment companies which demonstrated that Carnegie acted as agent for the companies insofar as Carnegie's primary function was to control all of their investment decisions. As a result, we believe that an agency relationship existed notwithstanding the absence of a written agreement to establish such relationship. See *N & G Constr., Inc. v. Lindley* (1978), 56 Ohio St.2d 415, 10 O.O.3d 521, 384 N.E.2d 704.

■ The Tax Commissioner's assertion that Carnegie must receive commissions from the purchase and sale of securities to qualify as a dealer in intangibles lacks merit. R.C. 5725.01(B) defines a "dealer in intangibles" as one who buys and sells securities "with a view to profit". Carnegie derived profit through a management fee based on the amount of money invested in the investment funds. Profit realized by Carnegie and its investment companies was dependent on whether Carnegie made sensible decisions in buying and selling securities. Investment performance would directly affect the profit level of the companies and likely affect the profit level of Carnegie itself with respect to the amount of capital flowing into or out of the funds at a given time. Therefore, we do not believe that R.C. 5725.01 required Carnegie to receive commissions in order to be a dealer in intangibles nor does such section require Carnegie to be a licensed broker in order to qualify as a dealer in intangibles.

■ Finally, the principles of statutory construction to which the Tax Commissioner refers are inapplicable to the case at bar. There is no need to resort to the rules of statutory construction where the language of the statute is plain and unambiguous and conveys a clear and definite meaning. An unambiguous statute is to be applied, not interpreted. *Storer Communications, Inc. v. Limbach* (1988), 37 Ohio St.3d 193, 194, 525 N.E.2d 466, 467; *Provident Bank v. Wood* (1973), 36 Ohio St.2d 101, 105–106, 65 O.O.2d 296, 298–299, 304 N.E.2d 378, 381–382. Here, we do not believe R.C. 5725.01(B) required the application of the rules of construction insofar as it is plain and unambiguous.

As a result of the foregoing, appellant's assignments of error are overruled.

Accordingly, the judgment of the trial court is affirmed.

*Judgment affirmed.*

FRANCIS E. SWEENEY and PATTON, JJ., concur.