N & G Construction, Inc., Appellant, *v.* Lindley, Tax Commr., Appellee.

(No. 78-459—Decided December 8, 1978.)

416

*Messrs. Gingery & Palmer, Mr. Thomas E. Palmer, Mr. William C. Wilkinson* and *Mr. William W. Wehr,* for appellant.

*Mr. William J. Brown,* attorney general, and *Mr. Charles M. Steines,* for appellee.

*Per Curiam.* The sole question to be decided in this cause is whether the decision of the Board of Tax Appeals, which determined that appellant was the "severer" of natural resources within the meaning of R. C. 5749.01 (H) and 5749.02, was reasonable and lawful. R. C. 5717.04.

The General Assembly has imposed, through the enactment, of R. C. 5749.02, an excise tax on the privilege of engaging in the severance of natural resources situated in this state, such tax liability to be satisfied by the "severer." "Severer" is defined by the General Assembly as "any person who actually removes" the natural resources. R. C. 5749.01(H).

Appellant urges a reversal of the board's determination, asserting as improper the board's failure to recognize the existence of an agency relationship between appellant and the owner of the severed coal, the R & F Coal Company.

Appellee argues that R. C. 5749.01(H) expressly provides that the person who actually severs the resource incurs the tax liability and, since appellant's personnel actually excavated the resource here, appellant must pay the

tax. Appellee disagrees with appellant's contention that the latter was acting as an agent for R & F, and points to the contract executed by the parties which designated appellant an "independent contract stripper."

This court concludes that the R & F Coal Company, the owner of the coal and contractor for its excavation, is the person who actually severed the coal. It was unreasonable for the board to render appellant liable for the severance tax, in effect recognizing as a basis for that determination the agency relationship between appellant and its employees who actually severed the coal, but on the other hand refusing to recognize the enterprise agency existing between appellant and the R & F Coal Company.

This conclusion is in accord with the general rule that when a question of whether a party has engaged an independent contractor or an agent, the important factor to be considered is the degree of control exercised by the parties over the work performed. Seavey, The Law of Agency, Section 84(C) (1964); *Indus. Comm.* v. *Laird* (1933), 126 Ohio St. 617, 186 N. E. 2d 718 (paragraph four of the syllabus). Determinations in this regard are to be made on an assessment of the particular facts of the cause, 3 American Jurisprudence 2d 430, Agency, Section 21; *Gillum* v. *Indus. Comm.* (1943), 141 Ohio St. 373, 48 N. E. 2d 234 (paragraph two of the syllabus), and when agency is established, the act of the agent becomes that of the principal. 3 American Jurisprudence 2d 626, Agency, Section 261; see *Posin* v. *A. B. C. Motor Court Hotel* (1976), 45 Ohio St. 2d 271, 278, 344 N. E. 2d 334; *Saunders* v. *Allstate Ins. Co.* (1958), 168 Ohio St. 55, 58-59, 151 N. E. 2d 1; *Atlantic and Great Western Ry. Co.* v. *Dunn* (1869), 19 Ohio St. 162.

The record in this cause is replete with indicia of control exercised by R & F over appellant.[1] R & F initially

---

[1] Appellee argues that the "Contract Stripping Agreement" designates appellant an "independent contractor" and, therefore, exemplifies the relationship between appellant and the R & F Coal Company. However, a description by the parties of their future relationship is not

performed all the surveying, drilling and testing of the coal at the prospective excavation site. Once actual excavation began, supervisors employed by R & F were situated on the excavation situs to closely oversee appellant's personnel and equipment. These supervisors commanded and directed virtually every facet of the extraction process, including determinations as to the location of the coal to be removed, the appropriate equipment to be utilized on the job, the time intervals within which removal should be performed, the quantity of coal to be extracted, and which of the several excavation techniques appellant could implement in the removal of the overburden and the coal.[2]

We do not agree that the General Assembly, by enacting R. C. 5749.01(H), intended that the term "person" be literally construed to relegate tax liability only to those who, in their individual capacities, operate the equipment which severs the natural resources. In our opinion, the reasonable and workable scheme under the facts of this cause must obligate the enterprise which ultimately directed the severance through the actions of its agent. See *Gulf Oil Corp.* v. *Kosydar* (1975), 44 Ohio St. 2d 208, 339 N. E. 2d 820 (paragraph two of the syllabus); *Canton* v. *Imperial Bowling Lanes, Inc.* (1968), 16 Ohio St. 2d 47, 242 N. E. 2d 566 (paragraph four of the syllabus).

Accordingly, the decision of the Board of Tax Appeals is reversed.

*Decision reversed.*

LEACH, C. J., HERBERT, CELEBREZZE, SWEENEY and LOCHER, JJ., concur.

W. BROWN and P. BROWN, JJ., concur in the judgment.

---

necessarily determinative when viewed in light of their actual subsequent activities. 3 American Jurisprudence 2d 430-431, Agency, Section 21. See *Bond* v. *Harrel* (1961), 13 Wisc. 2d 369, 108 N. W. 2d 552.

[2]This detailed supervision supplied by R & F was in part for the purpose of insuring compliance with federal reclamation regulations mandating preservation and restoration of the excavation situs.

CELEBREZZE, J., concurring. Since the majority has based its decision on an assessment of the factual circumstances surrounding the relationship between Appellant and the R & F Coal Company, I feel compelled to concur in the final result. However, were it not for the use of traditional principles of agency law the decision below would require an affirmance.

The plain meaning of R. C. 5749.01(H) is abundantly clear and unambiguous and therefore resort to various rules of statutory construction would be unnecessary. The General Assembly intended exactly what is written, the severance tax is to be imposed upon "any person who *actually removes* the natural resources from the soil or water in this state." (Emphasis added.)