UNITED STATES of America, Plaintiff,

v.

**FIRE RING FUELS, INC.,**
**Defendant/Third–Party**
**Plaintiff,**

v.

**HUCKLEBERRY COAL COMPANY,**
**INC., et al., Third–Party**
**Defendants.**

Civ. A. No. 89–38.

United States District Court,
E.D. Kentucky,
London Division.

Sept. 24, 1991.

Bruce T. Hill, Sp. Asst. U.S. Atty., Knoxville, Tenn., for plaintiff.

Lloyd Edens, Clyde & Edens, Middlesboro, Ky., for defendant.

## MEMORANDUM

SILER, District Judge, Sitting by Designation.

### FACTS

This matter is before the Court on the motion by the plaintiff, United States of America ("U.S."), for summary judgment. For the following reasons, the Court will grant the summary judgment motion of the U.S.

The U.S. places the following issues before the Court in its motion: (1) whether the defendant, Fire Ring Fuels, Inc. ("Fire Ring") was an operator and, hence, liable for the reclamation fees; (2) whether there is an applicable statute of limitations which binds the U.S.; (3) whether the U.S. is estopped from asserting its claim against

Fire Ring; and (4) whether the doctrines of laches, waiver, or release bar the U.S. from asserting its claim against Fire Ring. The Court will address each of these issues respectively.

On February 9, 1989, the U.S. filed this action for the collection of reclamation fees assessed against Fire Ring. Fire Ring filed a third-party complaint against Huckleberry Coal Company, Inc. ("Huckleberry"), Trinity Coal Company, Inc. ("Trinity"), Legend Coal Company, Inc. ("Legend"), Eugene Cobb,[1] and Steve Sizemore ("Sizemore") (collectively "third-party defendants"). In the third-party complaint, Fire Ring alleges that the third-party defendants agreed to pay the reclamation fees, but failed to do so.

Fire Ring began surface coal mining operations on June 15, 1981. During the period from June 1981 through September 30, 1986, Fire Ring produced 252,721.22 tons of coal. At the inception of the mining operation, Fire Ring's relationship with the third-party defendants can be characterized as follows. Fire Ring mined coal pursuant to Permit No. 055–0040.[2] The third-party defendants arranged for the sale of the coal and received a fixed price per ton for production delivered to the purchasers. The third-party defendants deducted certain amounts[3] and two dollars ($2.00) per ton override from the sales price. The remainder was paid to Fire Ring.

On March 5, 1982, Fire Ring began to usurp responsibility from the third-party defendants. The third-party defendants' financial condition began to deteriorate at this time, making it necessary that the purchaser of the coal pay Fire Ring directly. Fire Ring, upon receiving payment, paid the third-party defendants the amount owed to them.

In 1982, the Commonwealth of Kentucky ("Kentucky") sued Fire Ring for mining outside its permitted area. Apparently, the third-party defendants had been unable to

---

1. The complaint was later dismissed as to Eugene Cobb.

2. Legend held Permit No. 055–0040.

3. Those amounts were for royalties, excise taxes, reclamation taxes, severance taxes, hauling, etc.

secure a permit extension due to outstanding noncompliances. On May 12, 1982, Fire Ring entered into a Settlement Order ("Order") with Kentucky. The Order provided that "[t]he Operator conducted surface mining operations in Owsley County, Kentucky outside the boundaries of its permitted area on March 18, 1982 and April 16, 1982...." In settlement, Fire Ring paid a $20,000.00 penalty and became the permittee on Permit No. 055–0040 and Permit Application No. 095–0087.

On July 9, 1982, Fire Ring became the permittee on Permit No. 055–0040. On June 24, 1982, Fire Ring became the permittee on Permit No. 095–0087.[4] In connection with Permit Application No. 095–0087, Jimmy Renfro, Fire Ring's president, signed an affidavit stating that Fire Ring did not intend to have a contractual mining relationship with the third-party defendants.

In a letter dated December 1, 1982, Huckleberry stated that it owed Fire Ring $78,490.64, which amount was to be placed in escrow to pay reclamation fees on coal mined by Fire Ring. The third-party defendants were paid only a $1.00 per ton lease override after the December 1, 1982 letter. The record indicates that the third-party defendants' financial condition grew worse after December 1, 1982 and, consequently, they were unable to meet their obligations pursuant to the December 1, 1982 letter. Furthermore, it appears that Fire Ring was aware of the third-party defendants' financial woes. Nobody to date has paid the delinquent reclamation fees on the coal which Fire Ring mined. This suit was initiated following an OSM audit.

## DISCUSSION AND ANALYSIS

30 U.S.C. § 1232(a) provides that "[a]ll operators of coal mining operations ... shall pay ... reclamation fee[s]...." An operator is "any person, partnership, or corporation engaged in coal mining who removes or intends to remove more than two hundred fifty tons of coal from the earth within twelve consecutive calendar months." 30 U.S.C. § 1291(13). On its face, 30 U.S.C. § 1291(13) appears to be straightforward. However, in its application, it is not always clear who is an operator.

■ The parties do not cite any relevant Sixth Circuit cases. This Court, after reviewing the cited cases, believes that the appropriate analysis to be conducted is that enunciated in *United States v. Rapoca*, 613 F.Supp. 1161 (W.D.Va.1985). The *Rapoca* court was faced with the question of whether independent mining companies had an "economic interest" in the coal for which delinquent reclamation fees had been assessed, or whether they merely enjoyed an "economic advantage."

The *Rapoca* court, relying on *Parsons v. Smith*, 359 U.S. 215, 79 S.Ct. 656, 3 L.Ed.2d 747 (1959), set forth the following seven factors which this Court will weigh to determine whether Fire Ring was an operator: (1) whether Fire Ring's investments were in equipment, all of which was movable—not in the coal in place; (2) whether Fire Ring's investments in equipment were recoverable through depreciation—not depletion; (3) whether the contracts were completely terminable without cause on short notice; (4) whether the landowners did not agree to surrender and did not actually surrender to [Fire Ring] a capital interest in the coal in place; (5) whether the coal at all times, even after it was mined, belonged entirely to the landowners, and [whether Fire Ring] could sell or keep any of the coal; (6) whether Fire Ring was to have any part of the proceeds of the sale of the coal; and (7) whether Fire Ring was to look only to the landowners for all sums to become due them under their contracts.[5]

---

4. Prior to this time, the permit was in the name of an affiliate of Legend, Huckleberry, and Trinity.

5. In *Commissioner v. Southwest Exploration Co.*, 350 U.S. 308, 314, 76 S.Ct. 395, 398, 100 L.Ed. 347 (1956), the Supreme Court defined "economic interest" as consisting of two factors:

"'(1) acquir[ing], by investment, any interest in the [coal] in place', and 'secur[ing] by legal relationship income derived from the extraction of the [coal], to which he must look for a return of his capital.'" *Southwest Exploration* provides further guidance for this Court in determining whether Fire Ring was an operator.

*Rapoca,* 613 F.Supp. at 1165. The Court finds that Fire Ring was an operator pursuant to the *Rapoca* factors.

■ Fire Ring's investment was in both the coal and the equipment. Fire Ring was not paid a fixed fee, but rather was paid the residual for the coal. Fire Ring's interest was more capital in nature. From the beginning of their relationship, it was Fire Ring, and not the third-party defendants, that stood to benefit if coal prices rose. Gradually, as the third-party defendants' financial condition began to erode, more of the incidents of ownership were transferred to Fire Ring. Finally, Fire Ring did not look solely to the third-party defendants for all sums due it. Rather, Fire Ring looked to the ultimate coal purchasers for the sums due it. Therefore, this Court holds that Fire Ring was an operator throughout the period in question.

■ Fire Ring contends that it is not liable because the third-party defendants contracted to pay the reclamation fees. This argument is without merit. A reclamation fee is a tax. *United States v. Tri–No Enterprises, Inc.,* 819 F.2d 154, 159 (7th Cir.1987), and agreements by third-parties to pay the taxpayer's tax do not relieve the taxpayer of liability. *Jones v. Commissioner,* 306 F.2d 292 (5th Cir.1962). Therefore, the agreement between Fire Ring and the third-party defendants does not relieve Fire Ring of its obligations.

Fire Ring claims that a six-year statute of limitation applies to this action and, therefore, the U.S. is barred from collecting any fees which were due before February 9, 1983. Fire Ring relies upon *United States v. Gary Bridges Logging and Coal Co.,* 570 F.Supp. 531 (E.D.Tenn.1983), as support for its argument. The Court finds Fire Ring's assertion unpersuasive.

■ The parties have not cited the Court to a controlling Sixth Circuit case. The *Gary Bridges* court held that "actions to collect delinquent fees are subject to the six year statute of limitation for actions based on contract, or alternatively, to the statute of limitation for the collection of excise or income taxes." *Id.* at 532. The *Gary Bridges* court categorized the action which it was called upon to resolve as a contract action because the defendant had entered into an installment agreement to pay delinquent fees. However, no such proof has been presented to this Court and, thus, this is not a contract action.

■ Alternatively, the *Gary Bridges* court held that reclamation fees are a "tax" which is subject to the six-year statute of limitation prescribed in 26 U.S.C. § 6501(e)(3). This Court, as did the Seventh Circuit in *Tri–No,* 819 F.2d at 159 (7th Cir.1987), believes that 26 U.S.C. § 6501(e)(3) does not apply to actions to collect delinquent reclamation fees. Reclamation fees are a form of excise tax, *id.,* which are not imposed by subtitle D of the Internal Revenue Code, and, therefore, are not subject to the limitation period for actions to collect excise taxes. This Court holds, as did the *Tri–No* court, that no statute of limitation applies to limit the government's ability to collect delinquent reclamation fees.

■ The U.S. seeks summary judgment on the estoppel issue. Estoppel is an affirmative defense, Fed.R.Civ.P. 8(c), and, like any other issue, may be summarily adjudicated if it does not involve a genuine issue of material fact. *See Caplan v. Roberts,* 506 F.2d 1039 (9th Cir.1974). Fed. R.Civ.P. 56(e) provides that if the adverse party does not respond to a properly supported summary judgment motion, then "summary judgment, if appropriate, shall be entered against the adverse party."

■ The U.S. is rarely estopped from asserting claims. *See Heckler v. Community Health Servs. of Crawford County,* 467 U.S. 51, 104 S.Ct. 2218, 81 L.Ed.2d 42 (1984); *I.N.S. v. Miranda,* 459 U.S. 14, 103 S.Ct. 281, 74 L.Ed.2d 12 (1982); *Schweiker v. Hansen,* 450 U.S. 785, 788, 101 S.Ct. 1468, 1470, 67 L.Ed.2d 685 (1981). To establish estoppel, the asserting party must prove affirmative misconduct on the part of the government agent. *See United States v. River Coal Co.,* 748 F.2d 1103 (6th Cir. 1984). Fire Ring failed in its response to refute the contentions of the U.S. that it is

not estopped from asserting a claim. The record herein contains a paucity of evidence that the government agent engaged in "affirmative misconduct." Therefore, summary judgment will be granted on this issue.

Fire Ring contends that the doctrine of laches applies to this action to prevent the U.S. from recovering any delinquent fees from it. This argument, like the preceding one, is without merit. "Laches is not a defense ... in an action of this nature." *See Gary Bridges*, 570 F.Supp. at 533. Therefore, the Court holds that the doctrine of laches does not bar this action.