**TANKSLEY & ASSOCIATES, et al., Plaintiffs,**

v.

**WILLARD INDUSTRIES, INC., Defendant.**

**No. C–1–96–512.**

United States District Court, S.D. Ohio, Western Division.

March 27, 1997.

Gerald George Salmen, Wood & Lamping, Cincinnati, OH, for Plaintiffs.

Robert S. Kaiser, Santen & Hughes, Cincinnati, OH, for Defendant.

## ORDER DENYING DEFENDANT'S MOTION TO DISMISS

DLOTT, District Judge.

This matter is before the Court on Defendant's Motion to Dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure (doc # 3). For reasons more fully set forth below, Defendant's Motion to Dismiss is hereby **DENIED**.

### I. BACKGROUND

This action arises out of a claim of wrongful termination. The Plaintiffs, Tanksley & Associates, Spring City Sales Associates, and Arvalda Corp. ("Sales Associates") are former manufacturer's sales representatives of the Defendant, Willard Industries, Inc. ("Willard Industries") who were terminated in December 1994. The Sales Associates had been hired to solicit orders for the sales of products manufactured by Willard Industries. The Plaintiffs allege that Willard Industries wrongfully terminated them for improper reasons and in violation of good faith duties and fiduciary obligations. The Plaintiffs claim that duties of good faith and fair dealing and a fiduciary obligation exist between a manufacturer and a manufacturer's representative and that Willard Industries violated these duties when it terminated them.

### II. LEGAL STANDARD

A Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted should not be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–

02, 2 L.Ed.2d 80 (1957). All well-pleaded allegations must be taken as true and be construed most favorably toward the nonmovant. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). While a court may not grant a Rule 12(b)(6) motion based on disbelief of a complaint's factual allegations, *Lawler v. Marshall,* 898 F.2d 1196, 1199 (6th Cir.1990), the court "need not accept as true legal conclusions or unwarranted factual inferences." *Morgan v. Church's Fried Chicken,* 829 F.2d 10, 12 (6th Cir.1987). Consequently, a complaint will not be dismissed pursuant to Rule 12(b)(6) unless there is no law to support the claims made, the facts alleged are insufficient to state a claim, or there is an unsurmountable bar on the face of the complaint. Because a Rule 12(b)(6) motion to dismiss is directed solely to the complaint and any exhibits attached to it, *Haffey v. Taft,* 803 F.Supp. 121, 127 (S.D.Ohio 1992) (citing *Roth Steel Prods. v. Sharon Steel,* 705 F.2d 134, 155 (6th Cir.1983)), the focus is on whether the plaintiff is entitled to offer evidence to support the claims, rather than on whether the plaintiff will ultimately prevail. *Scheuer,* 416 U.S. at 236, 94 S.Ct. at 1686; *Haffey,* 803 F.Supp. at 127.

## III. APPLICABLE LAW

In their complaint, the Plaintiffs allege that their respective claims should be governed by the respective and applicable laws of the states of their current residences. The Defendant argues that Ohio law is applicable to this case. For purposes of their response to Defendant's Motion to Dismiss, Plaintiffs cite to this Court's preferential authority[1], which includes the Ohio Supreme Court, but deny that they are conceding that Ohio law necessarily governs the resolution of the merits of this action.

The jurisdiction of the Court over this matter is based on the diversity of the parties pursuant to 28 U.S.C. § 1332. A federal court sitting in diversity must apply the substantive law, including choice of law rules, of the state in which it sits. *Phelps v. McClellan,* 30 F.3d 658, 661 (6th Cir.1994) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 496, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477 (1941)). Thus this Court must apply Ohio's choice of law rules. In 1984, the Ohio Supreme Court formally adopted the Restatement (Second) of Conflicts of Law. *Morgan v. Biro Manufacturing Co., Inc.,* 15 Ohio St.3d 339, 341–42, 474 N.E.2d 286 (1984). The court outlined the approach as follows:

When confronted with a choice-of-law issue in a tort action under the Restatement of the Law of Conflicts view, analysis must begin with Section 146. Pursuant to this section, a presumption is created that the law of the place of the injury controls unless another jurisdiction has a more significant relationship to the lawsuit. To determine the state with the most significant relationship, a court must then proceed to consider the general principles set forth in Section 145. The factors within this section are: (1) the place of the injury; (2) the place where the conduct causing the injury occurred; (3) the domicile, residence, nationality, place of incorporation, and place of business of the parties; (4) the place where the relationship between the parties, if any, is located; and (5) any factors under Section 6[2] [of the Restatement of the Law of Conflicts] which the court may deem relevant to the litigation.

---

1. Under S.D. Ohio L.R. 7.2(b)(2), the Court "prefers that counsel rely upon cases decided by the Supreme Court of the United States, the United States Court of Appeals for the Sixth Circuit (or in appropriate cases the Federal Circuit), the Supreme Court of Ohio, and this Court."

2. Section 6 of 1 Restatement of the Law 2d, Conflicts of Laws 10, provides as follows:

 (1) A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law.

 (2) When there is no such directive, the factors relevant to the choice of the applicable rule of law include: (a) the needs of the interstate and international systems, (b) the relevant policies of the forum, (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue, (d) the protection of justified expectations, (e) the basic policies underlying the particular field of law, (f) certainty, predictability and uniformity of result, and (g) ease in the determination and application of law to be applied.

All of these factors are to be evaluated according to their relative importance to the case.

*Id.* at 342, 474 N.E.2d 286 (footnote renumbered and other footnotes omitted).

■ A claim of wrongful discharge is most similar to a tort claim and, therefore, application of these tort choice of law principles is appropriate. *See Sholes v. Agency Rent–A–Car, Inc.,* 76 Ohio App.3d 349, 354, 601 N.E.2d 634 (1991). In weighing the various factors for determining the choice of law to apply, the Court finds that Ohio law should be applied. In particular, the Court finds that the factors of certainty, predictability and uniformity of result, and ease in the determination and application of law to be applied, as set forth in Section 6 of the Restatement, warrant the application of Ohio law to this case.

## IV. ANALYSIS

### A. Duty of Good Faith

The Defendant first argues that the complaint fails to state a claim upon which relief may be granted because there is, in fact, no duty of good faith owed to an independent contractor under Ohio law. The Plaintiffs allege in their Complaint that they were independent contractors, and not employees, of Willard Industries. The Defendant primarily relies on one Ohio Court of Appeals case for the proposition that an employer owes no duty of good faith to an independent contractor. In *Kegelmeyer v. Fisher,* 1991 WL 218056 (Ohio App. 3 Dist.1991), the court held that the plaintiff, who was an independent contractor, was in an employment at-will relationship and that Ohio law "recognizes no good faith requirement to be imputed to an employment at-will relationship." *Id.* at *2. Because it is not clear that the court's holding was based on the independent contractor status and not the employment at-will characterization, the Defendant's reliance on this case for the proposition that an employer has no duty to act in good faith in terminating its relationship with an independent contractor is misplaced, and this argument fails to serve as a basis for dismissal. Furthermore, if the relationship between the parties in this case was, in fact, that of an agency—as will be discussed in more detail in the next section—then good faith duties clearly would apply.

### B. Fiduciary Obligation

■ Defendant's second ground for its Motion to Dismiss is that there is no fiduciary relationship between a principal and an independent contractor. The Defendant relies on *Tool Steel Products Sales Corp. v. XTEK, Inc.,* 1993 WL 19476 (Ohio App. I Dist.1993) for this proposition. The plaintiff in *Tool Steel,* similar to the plaintiffs in the instant case, was a sales representative for a manufacturer. The plaintiff claimed that the circumstances surrounding its termination gave rise to a breach of fiduciary duty. *Id.* at * 1. The Court noted that a fiduciary role may be assumed by formal appointment, or it may arise de facto from a more informal relationship between the parties. *Tool Steel,* 1993 WL 19476 at *4. For de facto status to arise, however, "both parties must understand under the circumstances that a special trust and confidence has been reposed in one by the other." *Id.* (citing *Blon v. Bank One, Akron, N.A.,* 35 Ohio St.3d 98, 101, 519 N.E.2d 363 (1988)). The court held that because the parties' relationship was defined by a representation agreement negotiated at arm's length, and because the plaintiff's relationship to the defendant was that of an independent contractor, there was no fiduciary duty (de facto or otherwise) established. *Tool Steel,* 1993 WL 19476 at *4.

The Defendant claims, on the basis of this case, that it owed no fiduciary obligation to the Plaintiffs. The Defendant points out that in the Plaintiffs' complaint, the Plaintiffs allege that their status was that of an "independent contractor." The Defendant argues that therefore, under the holding of *Tool Steel,* there was no fiduciary duty owed to the Plaintiffs. Although this case does perhaps support the Defendant's contention that an independent contractor does not result in a formal fiduciary relationship, this does not dispose of any claim Plaintiffs might make with regard to a de facto fiduciary relationship.

The Plaintiffs argue that a fiduciary relationship exists between a manufacturer and a manufacturer's sales representative. In *Davis & Tatera, Inc. v. Gray–Syracuse, Inc.*, 796 F.Supp. 1078 (S.D.Ohio 1992), on which the Plaintiffs rely, the court found that the relationship between the defendant manufacturer and the plaintiff sales representative was fiduciary in nature. However, the court's holding turned on the fact that the relationship was an agency. *Id.* at 1086. Both parties had agreed that an agency relationship existed, and the court held that "the *agency* relationship is a fiduciary one, and as such, the parties to an *agency* agreement owe each other the obligation to act in good faith." *Id.* (emphasis added). The holding of *Randolph v. New England Mutual Life Insurance Co.*, 526 F.2d 1383 (6th Cir.1975), on which the *Davis* court relied, likewise involved a relationship expressly determined to be an agency. *Randolph*, 526 F.2d at 1387.

■ Thus, although an agency relationship may generally require good faith and at times a fiduciary duty, the critical inquiry for purposes of this case is whether an agency relationship existed between the parties. Also, as discussed earlier, regardless of agency status, a de facto fiduciary relationship may arise under Ohio law when a special trust or confidence has been reposed. *Umbaugh Pole Building Co., Inc. v. Scott*, 58 Ohio St.2d 282, 286, 390 N.E.2d 320 (1979). There is some question as to whether the relationship between the parties in the instant case was of the nature of an agency and whether a fiduciary obligation was present. The cases cited by the parties show the manufacturer/sales representative relationship being construed at times as an agency and at times as an independent contractor relationship. The Defendant makes much of the fact that the Plaintiffs referred to them-

selves in their Complaint as "independent contractors" and seems to imply that they should be bound by that characterization. This characterization, however, is not determinative because an independent contractor may also be an agent. Restatement (Second) of Agency § 2 (1957).[3]

■ Furthermore, in ruling on a 12(b)(6) motion, the court "need not accept as true legal conclusions or unwarranted factual inferences." *Morgan*, 829 F.2d at 12. Plaintiffs' characterization of the nature of their relationship to the Defendant is a legal conclusion, which the Court need not accept as true. In determining whether a relationship is that of a principal/agent or principal/independent contractor, the determining factor is the type and extent of control retained by the principal. *Logue v. United States*, 412 U.S. 521, 527, 93 S.Ct. 2215, 2219, 37 L.Ed.2d 121 (1973); *N & G Construction, Inc. v. Lindley*, 56 Ohio St.2d 415, 417, 384 N.E.2d 704 (1978). Furthermore, this determination of the nature of an employment relationship is to be made on the basis of the particular facts of the case. *Prudential Insurance Co. v. Eslick*, 586 F.Supp. 763, 765 (S.D.Ohio 1984) (citing *N & G Construction*, 56 Ohio St.2d at 417, 384 N.E.2d 704).

Therefore, the Court cannot determine on the facts presented in the Complaint alone what the nature of the relationship was. The nature of the relationship is relevant to what duties, if any, were owed from the Defendant to the Plaintiffs. It is clear, however, that it is not "beyond doubt that the plaintiff[s] can prove no set of facts" which would entitle them to relief. *Conley*, 355 U.S. at 45–46, 78 S.Ct. at 101–02. Accordingly, the Court finds that the Plaintiffs have stated a claim upon which relief may be granted and are entitled to present evidence to support their claim.

---

**3.** Restatement (Second) of Agency § 2 (1957): "An independent contractor is a person who contracts with another to do something for him but who is not controlled by the other nor subject to the other's right to control with respect to his physical conduct in the performance of the undertaking. *He may or may not be an agent.*" (emphasis added).

In explaining the agent/independent contractor dichotomy, § 14N states: "One who contracts to

act on behalf of another and subject to the other's control except with respect to his physical conduct is an agent and also an independent contractor." An example of an independent contractor as agent would be an attorney. They are not subject to the control of their clients with regard to their physical conduct in the performance of their duties, but they do owe their clients the basic obligations of agency. § 14N cmt. a.

## V. CONCLUSION

For all the reasons stated in this Order, the Defendant's Motion to Dismiss is hereby **DENIED.**

**IT IS SO ORDERED.**