# CIRCUIT COURT OF FAIRFAX COUNTY

Aniello Avino

v.

William D. DeWys et al.

May 9, 1997

Case No. (Law) 138625

BY JUDGE M. LANGHORNE KEITH

This medical malpractice case was originally filed by Plaintiff, Mr. Aniello Avino, on February 3, 1995, against Defendants, William D. DeWys, M.D., Kaiser Foundation Health Plan of the Mid-Atlantic States, Inc. (hereinafter "Health Plan"), Capital Area Permanente Medical Group, P.C. (hereinafter "CAPMG"), and Kaiser Permanente. Mid-Atlantic Permanente Medical Group, P.C. (hereinafter "MAPMG") was added as a party on Defendants' motion on November 22, 1996. The Court took this matter under advisement on April 24, 1997, and has now had an opportunity to review the memoranda and the evidence presented during that hearing. For the reasons stated below, the Court finds that the Plaintiff is estopped under the inconsistent position doctrine from arguing that the medical malpractice cap of $1 million pursuant to Va. Code Ann. § 8.01-581.15 (1992)[1] does not apply to Defendants.

---

[1] Hereinafter referred to as the "cap." Va. Code § 8.01-581.15 provides that "[i]n any verdict returned against a health care provider in an action for malpractice ... the total amount recoverable for any injury to, or death of, a patient shall not exceed one million dollars." *See* Defendants' Motion for Entry of Judgment Pursuant to Code § 8.01-581.15 filed on January 17, 1997. The Supreme Court and the 4th Circuit have upheld the statute as constitutional. *Etheridge v. Medical Center Hospitals*, 237 Va. 87 (1989); *Boyd v. Bulala*, 647 F. Supp. 781 (W.D. Va. 1986), aff'd in part, rev'd in part, 877 F.2d 1191 (4th Cir. 1989).

## 1. *Background*

Mr. Avino was a twenty-seven-year-old police officer when he was diagnosed with Hodgkin's disease in 1990. He was a member of Kaiser Permanente, a Health Maintenance Organization in Virginia. His treating physician was Dr. DeWys. Although Mr. Avino was cured of Hodgkin's disease, during the time he was under Dr. DeWys' supervision, he suffered from pulmonary and cardiovascular damage due to overexposure to radiation because of negligently-administered treatment for his disease.

Mr. Avino's Motion for Judgment filed February 3, 1995, prayed for $1 million in damages, which was amended the Friday before trial commenced on Monday to $4 million in damages. In Plaintiff's Motion to Amend the *Ad Damnum* filed on December 5, 1996, Plaintiff submitted that the $1 million cap should not apply in this case as it was discriminatory under the due process clause, the equal protection clause, and the Americans with Disabilities Act. 42 U.S.C. § 12101 *et seq.* (hereinafter "ADA"). The Motion to Amend was heard and granted by Judge Stitt on December 13, 1996.

Trial in this case began on December 16, 1996, after which the jury rendered a Plaintiff's verdict of $4 million on December 23, 1996. All of the Defendants were liable to the Plaintiff under the verdict as the parties had submitted an agreed stipulation to the jury stating that the corporate Defendants would be liable for Dr. DeWys' actions.[2]

Following the trial, defendants moved to have the verdict reduced under the provisions of the Virginia Medical Malpractice Statute, Va. Code Ann. § 8.01-581.15. In response, Plaintiff, for the first time, raised the issue that the Defendants were not health care providers who could benefit from the $1 million cap. The Court ruled on February 7, 1997, that all of the Defendants were protected by the cap under the doctrine of respondeat superior. On February 14, 1997, the Court heard the parties' arguments on Defendants' Motion for Summary Judgment because the action was time barred, which the Court denied. On the same day, the Court heard Plaintiff's Motion to Correct the Verdict Form. Plaintiff asked the Court to amend the form as it did not mention MAPMG as one of the Defendants. The Court ruled that it would include MAPMG in the judgment form and that the jury verdict form would remain as it was. *See* Transcript of February 14, 1997, at 20, lines 16-22.

---

[2] See Jury Instruction 8 which reads: "If you find your verdict for Mr. Avino based upon the negligence of Dr. DeWys, then you shall also return your verdict against Kaiser Foundation Health Plan of the Mid-Atlantic States, Inc., Capital Area Permanente Medical Group, Inc., and Mid-Atlantic Permanente Medical Group, Inc."

Also on February 14, the Court heard Defendants' argument on their Motion to Strike the Plaintiff's request for a hearing on the ADA. The Court denied the motion to strike and said it would allow the Plaintiff to present argument on the ADA on February 21, 1997, at 8:30 a.m.

The Plaintiff then submitted a Motion to Reconsider the Court's decision on its vicarious liability ruling made on February 7, 1997. The Court denied the Motion, and the parties proceeded to argue the ADA issue as planned. After hearing the parties' arguments, the Court denied the Plaintiff's Motion to Reinstate the Jury Verdict by reason of the ADA. *See* Transcript of February 21, 1997. Plaintiff's theory was that the medical malpractice cap was discriminatory under the ADA. The Court's ruling is at 26, lines 18-19.

At the end of the February 21st hearing, the Court understood that all of the post-trial motions had been heard and therefore ordered the parties to submit a final order within two weeks. In the meantime, the Supreme Court of Virginia handed down the *Schwartz v. Brownlee*[3] decision before a final order on vicarious liability was entered, and thus the Court convened a hearing in Chambers on March 14, 1997, to discuss with counsel how to proceed. A telephone conference was held at the Defendants' request due to discovery matters on March 20, 1997, at which time the Court repeated that discovery would be confined to the issue of whether the Defendants were agents and thus health care providers under Va. Code § 8.01-581.1. *See* Transcript of March 20, 1997. Post-trial motions were heard on April 24, 1997, concerning estoppel, the medical malpractice gap, and whether the Defendants qualified as health care providers and/or agents under the medical malpractice statute.

## 2. *CAPMG As A Health Care Provider/Agent*

Defendants argue that CAPMG qualifies as a health care provider, as this term was defined at the time of the medical malpractice in Va. Code Ann. § 8.01-581.1,[4] because it was either a health care provider itself or an agent of a health care provider, i.e., Health Plan. The parties agree that Health Plan is a health care provider as defined in the HCP Statute.

In pertinent part, the HCP statute at the time of the malpractice in 1990 stated that a health care provider:

> means (i) a person, corporation, facility or institution licensed by this Commonwealth to provide health care or professional services as a ...

---

[3] Schwartz v. Brownlee, 253 Va. 159 (1997).

[4] The applicable statute is found in the 1989 Acts of Assembly, Chapter 730, and will hereinafter be referred to as the "HCP statute."

health maintenance organization, (ii) a professional corporation, all of whose shareholders or members are so licensed ... *or an officer, employee or agent thereof acting in the course and scope of his employment*. Va. Code Ann. § 8.01-581.1 (1990) (emphasis added.)

It would appear that the Defendant CAPMG is a provider for Health Plan and therefore an agent for purposes of providing health care to an HMO.[5] CAPMG entered into a medical service agreement with Health Plan effective January 1, 1981.[6] Under the Medical Services Agreement, CAPMG undertakes to provide all medical services for the members of the Health Plan. This undertaking is consistent with the statutory scheme creating HMOs in Virginia. *See, e.g.*, Va. Code Ann. § 38.2-4300 *et seq.* In fact, an HMO can only furnish health care services through "providers" that are under contract with or employed by the HMO. Va. Code Ann. § 38.2-4303(3). Further, a participating provider is required by statute to hold members of the HMO harmless from payment and receives its compensation from the HMO not the patient. Va. Code Ann. § 38.2-4300. During the relevant period, CAPMG was a foreign professional corporation holding a certificate of authority to transact business in Virginia. Plaintiff's Post Trial Exhibit 1. One of the terms of a foreign professional corporation's qualification is that only stockholders and employees of the professional corporation who are licensed or otherwise legally qualified by the Commonwealth may perform professional services in Virginia. Va. Code Ann. § 13.1-544.2(1). As CAPMG was a participating provider for Health Plan, it would follow that CAPMG was also Health Plan's agent.

If the Court were to find that CAPMG is an agent of Health Care, CAPMG would also be considered a health care provider entitled to protection of the cap.[7] According to *Hadeed v. Medic-24, Ltd.*, 237 Va. 277 (1989), cited by the Defendants, there are four factors a court must look to in determining agency:

Four factors enter into determination of the question whether a master-servant relationship exists within the contemplation of the doctrine of respondeat superior, (1) selection and engagement of the servant, (2)

---

[5] Health Plan is a licensed health maintenance organization and qualifies for the cap.

[6] This document, along with amendments 1 through 4 was admitted as Defendants' Post Trial Exhibit 1 and will hereinafter be referred to as the "Medical Service Agreement."

[7] Although the Health Plan-CAPMG Medical Services Agreement specifically disclaims any agency relationship, "[w]hat the parties call themselves is immaterial; the law looks to the actual relationship between the parties." 1A M.J., *Agency*, § 12 (1993). *See United States v. Rapaco Energy Co.*, 613 F. Supp. 1161 (W.D. Va. 1985), citing M.J.

payment of compensation, (3) power of dismissal, and (4) power of control. The first three factors are not essential to the existence of the relationship; the fourth, the power of control, is determinative.

*Hadeed, supra* at 288; quoting *Naccash v. Burger*, 233 Va. 406, 418-419 (1982); *accord Stover v. Ratliff,* 221 Va. 509, 511-12 (1980); *Baker v. Nussman,* 152 Va. 293, 303 (1929).

Defendants had the burden of proving an agency relationship between Health Plan and CAPMG. *See* 1A M.J., *Agency,* § 111 (1993). Defendants argue that CAPMG is an agent of Health Plan because Health Plan effectively controls CAPMG, and without Health Plan, CAPMG could not function. According to Defendants' witness, Dr. Adrian Long, CAPMG has no assets of its own and is not in charge of patients' records. In fact, CAPMG would have no patients if Health Plan did not provide them. Apparently, the records are the property of the patients. It would seem that CAPMG's only function is to provide Health Plan with doctors and that Health Plan does control CAPMG.

Although the Court finds the arguments presented by the Defendants to be persuasive, the Court recognizes that these are issues of fact that should have been presented to the jury during the trial. In *Hadeed, supra,* the court declined to make a determination on whether a master-servant relationship existed because it found that the question of whether or not doctors were under the control of Medic-24 (which maintained medical offices and provided general family medical services) was a question of fact that should have gone before a properly instructed jury. The Court is currently in a similar situation to that of the *Hadeed* court in that the matter before it is a disputed question of fact, not law. *See* 1A M.J., *Agency,* § 122 (1993):

In determining the question of the existence or the nonexistence of an agency in any particular instance, the firmly-established general rule is that when the facts relied upon to establish the existence of an agency are undisputed and conflicting inferences cannot be drawn from such facts, the question of the existence of the agency is one of law for the court; but if the facts pertaining to the existence of an agency are conflicting, or conflicting inferences may be drawn from them, the question of the existence of the agency is one of fact for the jury.

When the Court initially decided to hold the April 24, 1997, hearing, it did so assuming that the evidence would clearly indicate as a matter of law

whether or not CAPMG was Health Plan's agent. *See* Transcript, Thursday, March 20, 1997, at 35, where the Court said: "[w]e will have a request for production for the contract between Kaiser and CAPMG and between CAPMG and Dr. DeWys. Then after you get those contracts, you can have a corporate designee of Kaiser to flesh out that relationship. And that will be the evidence that will be before the Court on the 24th." (Note that the scope of the hearing was only to concern CAPMG's agency, not MAPMG's, *see* Transcript *supra* at 23 and the structure of the HMO.) Although the Court is persuaded by Defendants' arguments, the evidence presented at that hearing concerning agency clearly presents questions of fact which can only be determined by a jury.

Therefore, in keeping with its decision that the Plaintiff is estopped from raising the issue that the Defendants are not health care providers post trial, the Court also rules that this issue, agency/control, is one that could have been decided by the jury had it been properly raised earlier in the trial.

### 3. *The Doctrine of Estoppel by Inconsistent Position*

It is well established under Virginia law that a party cannot argue different positions during the course of the same trial. "In Virginia, we have ... approved the general rule that a party is forbidden to assume successive positions in the course of a suit ... which are inconsistent with each other or mutually contradictory. A litigant is estopped from taking a position which is inconsistent with one previously assumed ...." *Ring v. Poelman*, 240 Va. 323 (1990) (quoting *Rohanna v. Vazzana*, 196 Va. 549, 553 (1954) (quoting *Burch v. Grace Street Bldg. Corp.*, 168 Va. 329 (1937)); *accord Fisher v. Commonwealth*, 236 Va. 403, 417 (1988); *Leech v. Beasley*, 203 Va. 955, 962 (1962).

The Court will not allow Plaintiff to argue post trial that the Defendants were not eligible for the protection of the medical malpractice cap when Plaintiff's position throughout this litigation was that the medical malpractice cap did apply. "Where a party assumes a certain position in a legal proceeding and succeeds in maintaining it, he cannot thereafter, simply because his interests have changed, assume a contrary position, especially if it is to the prejudice of a party who has acquiesced in the position formerly taken by him." 7A M.J., *Estoppel*, § 34 (1985); *Chesapeake & O. R. v. Rison*, 99 Va. 18 (1900).

The medical malpractice cap and the Defendants' status as health care providers was not an issue in this case until December 13, 1996, three days before the trial date, when the Plaintiff was heard on his motion requesting to

increase his *ad damnum* clause from $1 million to $4 million. Indeed, prior to the issuance of the verdict in this case, Plaintiff had never taken the position in this litigation that the cap did not apply to the Defendants. Up until that time, there had been no discovery on the issue of whether the Defendants were health care providers for purposes of the cap in this case. Plaintiff moved to increase the *ad damnum* because he planned to argue that under the ADA, the Virginia Medical Malpractice cap discriminated against medical malpractice victims such as Mr. Avino. Plaintiff made no mention at that time that he believed the cap would not apply to Defendants because they were not health care providers. Plaintiff explained to the Court that he wanted to preserve his right to challenge the cap under the ADA; the Defendants acquiesced because Plaintiff's position at that time was that the cap did apply to Defendants. *See* Transcript of December 13, 1996, hearing at 13, 18. In fact, in his Motion to Amend the *Ad Damnum*, Plaintiff admitted that he was "aware that the ... cap ... would only allow him to recover $1,000,000.00." Nowhere in his Motion to Amend the *Ad Damnum* did Mr. Avino assert that he wished to argue that the Defendants were not health care providers. Only post trial, after all the evidence had been heard by the jury and Plaintiff received a $4 million verdict, did he attempt to argue that the cap did not apply. This the Court will not allow him to do because Plaintiff assumed the opposite position during the trial.

The Court finds that Plaintiff's counsel specifically stated on the record that the Defendants were health care providers under the statute for purposes of the medical malpractice statute (and therefore the cap). *See* Plaintiff's Memorandum in Support of Motion for Temporary Restraining Order at 5 where Plaintiff stated that: "Capital Area Permanente Medical Group, P.C., is a 'health care provider' for purposes of the medical malpractice action, pursuant to Va. Code § 8.01-581.1, but is not a 'practitioner of the healing arts' for purposes of Va. Code § 8.01-399(F)." Plaintiff claims that because his statement was made during a separate case from this one, *Avino v. Pledger and Associates*, Chancery No. 146267, it should not estop him from arguing that the Defendants are not health care providers in this litigation. The Court disagrees. Plaintiff incorporated his statement by reference into this case, *Avino v. DeWys et al.*, L 138625, in his Memorandum in Opposition to Motion for an Order Respecting Discovery From, and Pre-Trial Access To, Certain of Defendants' Employees and for a Stay of this Action, at 2, where he expressly stated, "Mr. Avino adopts the arguments made by him in his Memorandum in Support of Motion for a Temporary Restraining Order heretofore filed and argued in Chancery No. 146267, *Avino v. Pledger & Associates*."

The Court finds that Defendants have met their burden of proving they would be prejudiced if estoppel did not foreclose Plaintiff from bringing his

argument that the Defendants are not eligible for the medical malpractice cap. Although it is not clear that reliance is an element of the doctrine of estoppel by inconsistent position, the Defendants justifiably relied on Plaintiff's position (communicated through both statements and conduct) that the Defendants were health care providers entitled to the protection of the medical malpractice cap throughout this case.

"[T]o constitute an estoppel, the party claiming it must have acted upon the statement or conduct of the other differently from what would have been his course without the statement or conduct." 7A M.J., *Estoppel*, § 30 (1985); *see also Chesapeake & O. R. v. Walker, supra.* "Estoppel arises where one, by his conduct, lulls another into false security and into a position that he would not take only because of such conduct." *United States ex rel. Humble Oil & Ref. Co. v. Fidelity & Cas. Co.*, 402 F.2d 893, 897 (4th Cir. 1968) (quoting *McWaters and Bartlett v. United States*, 272 F.2d 291, 296 (10th Cir. 1959)). *See also* 28 Am. Jur. 2d, *Estoppel and Waiver*, § 69 (1966): "Certainly the elements of reliance and injury, while often considered, do not enter into such so-called 'estoppel' to the same extent that they do in equitable estoppel proper."

For example, early on in this litigation, the Defendants requested a medical malpractice panel. Defendants argue that Plaintiff made a "tactical decision" that his claim would be against health care providers at the time the panel was empaneled because panels only have jurisdiction to hear cases concerning health care providers. Plaintiff never objected to the Panel and used evidence from the Panel in his case at trial. Had Plaintiff argued his current position then, Defendants could have argued that the panel opinion was inadmissible. If the Court allows Plaintiff to now argue that the Defendants are not health care providers, then it would also have to address the question of whether the Panel was illegally constituted and whether all Plaintiff's evidence associated with the Panel was legitimate.

Another badge of reliance on the part of the Defendants is illustrated by the stipulation the parties entered into on August 28, 1996. The stipulation provided that "[i]f a breach of the standard of care is established on the part of Dr. DeWys which is a proximate cause of injury and damage to Mr. Avino, the corporate co-defendants will be vicariously liable." *See* Plaintiff's Trial Exhibit 6. In agreeing to the stipulation, Health Plan assumed vicarious liability for Dr. DeWys. The parties agree that Health Plan was an HMO and a health care provider at the time the malpractice occurred and, therefore, was undoubtedly eligible for the cap. If the Defendant Health Plan had known, however, that Plaintiff would change its position post verdict and argue that CAPMG was

not protected by the cap, it is unlikely that Health Plan would have stipulated as to its vicarious liability.

Moreover, during the hearing on whether the Plaintiff could increase his *ad damnum*, Defendants relied on Plaintiff's representations that he recognized the $1 million cap and was only preserving his right to argue whether the ADA applied post trial. Had the Plaintiff raised the issue of whether the medical malpractice cap applied when he moved to increase his *ad damnum*, the Defendants would undoubtedly have opposed the motion or at least moved for a continuance of the trial in order to prove that they were health care providers entitled to the benefits of the cap. It is most unlikely that Judge Stitt would have allowed the amendment on the eve of trial but for the Plaintiff's explanation that the amendment was for the narrow and limited purpose of attacking the cap under the ADA.

Finally, as stated above, if Plaintiff had raised the cap issue in a timely manner, the question of agency and other related health care provider issues could have been presented to the fact finder. Instead, the jury was told that if it found against Dr. DeWys, it should also find against the corporate Defendants.

### 4. *Reduction of Judgment Pursuant to Va. Code § 8.01-581.15*

Pursuant to the Court's ruling in Defendants' favor on their estoppel claim, the Court orders that the jury verdict of $4 million be reduced to $1 million under the Virginia Medical Malpractice statute, Va. Code § 8.01-581.15.