**RED RIVER COAL COMPANY, INC., Plaintiff,**

v.

**MANNING COAL CORPORATION, et al., Defendants.**

**Civ. A. No. 89–0021–B.**

United States District Court, W.D. Virginia, Big Stone Gap Division.

Nov. 27, 1991.

William J. Sturgill, Sturgill, Sturgill & Stewart, Norton, Va., Mark Siegel, U.S. Dept. of Interior, Knoxville, Tenn., for plaintiff.

Scott W. Mullins, Coeburn, Va., Elsey A. Harris, III, Mullins, Thomason & Harris, Norton, Va., for defendants.

## MEMORANDUM OPINION

WILSON, District Judge.

This action was brought by Red River Coal Company, Inc. ("Red River, Inc.") against Manning Coal Corporation ("Manning Coal") and its president, Kenneth Manning ("Manning"), to recover reclamation fees that Red River, Inc. was required

to pay the Office of Surface Mining arising out of Manning Coal's surface mining operations in Wise County, Virginia, under a contract with Red River, Inc. The United States has intervened and is seeking to recover statutory penalties and interest from Manning Coal. Red River, Inc. is a Virginia corporation with its principal place of business in this state. Manning Coal is a Kentucky corporation with its principal place of business in that state and Manning is a citizen of Kentucky. Accordingly, there is diversity jurisdiction over Red River, Inc.'s claims pursuant to 28 U.S.C. § 1332. There is jurisdiction over the United States' claim pursuant to 30 U.S.C. § 1232(b).

Manning Coal and Manning maintain that Red River, Inc.'s contractual claims are barred by the statute of limitations, that Red River, Inc. lacks standing to bring suit, that Red River, Inc. was a mere volunteer when it paid reclamation fees, that Red River, Inc.'s claim is barred by the statute of limitations, and that the United States' claim is barred by *res judicata* and collateral estoppel. Manning also maintains that even if Manning Coal is liable to Red River, Inc., he is not personally liable because he acted only in his corporate capacity. The case has been tried by the court. From the evidence adduced at trial and arguments of counsel, the court finds that Manning Coal is contractually bound to pay the reclamation fees paid by Red River, Inc., that that claim is not barred by the statute of limitations, and that Manning is personally liable to Red River, Inc. because he transacted business in Virginia through his corporation without a certificate of authority to transact business in Virginia. The court finds, however, that the United States' claim for penalties and interest is barred by *res judicata.*

On June 25, 1981, Manning Coal entered into a written contract with Red River Coal Company, a partnership ("the Red River Partnership"), to surface mine various seams of coal designated on a map attached to the contract. The contract called for Manning Coal to perform all on-site mining operations, including reclamation, and to sell all coal to the Red River Part-

nership. The agreement also provided that Manning was "to pay all severance or any other taxes of whatever kind levied against the coal which [was] mined and removed from the designated area."

On August 1, 1983, Manning Coal entered into a written contract with Greater Wise, Inc., River Processing, Inc., and Humphreys Enterprise, Inc. (collectively the "Humphreys Group"), companies sharing some common ownership and management with the Red River Partnership, to surface mine various seams of coal designated on a map attached to the contract. The contract called for Manning Coal to perform all on-site mining operations, including reclamation, and to sell all coal to the Humphreys Group. The agreement also provided that Manning Coal was "to pay all severance or any other taxes of what ever kind levied against the coal which [was] mined and removed from designated area, except Federal Black Lung Excise [taxes]."

On December 28, 1983, the Humphreys Group informed its contract mine operators, including Manning Coal, that they would be "relieved of the responsibility of payment of the OSM reclamation fees on all coal mined after January 1, 1984." According to the letter, "Humphreys Enterprises, Greater ·Wise or another related company [would] assume the liability and the mining contract between the contractors and the Humphreys Group...." Reflecting "the change in responsibility," the base price per ton was reduced 35¢.

Between June of 1981 and December 31, 1983, Manning Coal produced 454,446.82 tons of coal from coal reserves mined under the two contracts. Manning Coal, however, did not report the production to the Secretary of the Interior or pay abandoned mine land reclamation fees on the production as required by 30 U.S.C. § 1232. The reclamation fees tax was 35¢ per ton, for a total unpaid tax of $159,056.38 and stipulated unpaid penalties and interest of $113,016.74.

In August of 1984, Red River, Inc. was incorporated, and later that year all of the

assets of the Red River Partnership and the two pertinent mining contracts were assigned to it.[1]

In January of 1985, the Humphreys Group and Red River, Inc. filed a declaratory judgment action against the United States seeking a declaratory judgment that they were not liable to the United States for payment of the mine reclamation fees involved in this case or for other reclamation fees arising out of other contract mining operations.[2] The United States contended that Red River, Inc. was jointly liable with Manning Coal for the fees, penalties, and interest. During the pendency of the declaratory judgment action, Manning assured Red River, Inc. on numerous occasions that Manning Coal would pay any mine reclamation fees arising out of its mining operations for which Red River, Inc. might be held liable.

In October 1985, Red River, Inc. sent Manning Coal a letter proposing to permit Manning Coal to mine coal on Red River, Inc.'s "Dogwood permit." Under the proposal, Red River, Inc. was to deduct 50¢ per ton for each ton mined and sold to Red River, Inc. The funds were to be "accumulated to cover the possibility that Red River, Inc., or one of its sister corporations or partnerships" might be held liable for the mine reclamation fees Manning Coal failed to pay for the June 1981—December 1983 period. The letter reiterated that by contract those fees were supposed to have been the responsibility of Manning Coal. Under the proposal, amounts to be withheld were to be placed in a joint, interest-bearing account in the event Red River, Inc. or any of its affiliates were "found liable by any court of competent jurisdiction" for the unpaid fees, penalties, and interest for the June 1981—December 1983 period. The proposal further provided that should the escrowed funds be insufficient to cover "the potential liability" of Red River, Inc. or its affiliates before "removing its mining equipment from the Dogwood permit area," Manning Coal would satisfy Red River, Inc.'s total potential liability by either: 1) paying into the escrowed account an amount sufficient "to cover total potential liability," 2) assigning "valid third party leases" sufficient to secure payment of the balance of the potential liability, or 3) "signing an enforceable debt instrument in Red River, Inc.'s favor for the balance of the potential liability." Finally, the proposal provided that "[n]othing contained in this letter shall be construed as to require Red River ... to follow any particular course of action and legal strategy or tactics or to take or do any futile act or course of conduct in its defense of [the United States' claims]." Manning signed the agreement as "accepted and agreed," returned it to Red River, Inc., and commenced mining operations under the "Dogwood permit."

The Humphreys Group and Red River, Inc. settled the declaratory judgment action with the United States once it became apparent that they would likely be found liable for the reclamation fees, penalties, and interest. The United States maintained that the total liability of the various Humphreys Group Companies, which included Red River, Inc. totaled $1,302,-511.74. The United States agreed, however, to accept $675,000.00 for the past due

---

1. The August 1, 1983 contract was between Manning Coal and Greater Wise, Inc., River Processing, and Humphreys Enterprises, Inc. Manning Coal asserts that there is no evidence that the parties contracting with Manning Coal assigned their rights in the 1983 contract to Red River Inc. The court finds from the testimony that Greater Wise, Inc. merged with River Processing, Inc., and the merged company assigned its interest to Red River, Inc. (Tr 118). Subsequently, Humphreys Enterprises assigned its interest to Red River, Inc., as well. (*See* TR 119).

2. Although the Red River Partnership was a named plaintiff in that action, the partnership was no longer conducting business and all of its assets had been assigned and transferred to Red River Inc. on October 1, 1984. Testimony showed that the Red River Partnership conducted no further business after that date. When the declaratory judgment action was settled, the settlement agreement was signed by the president of Red River, Inc. for "Red River Coal Co." As the Red River Partnership had transferred all of its assets to Red River, Inc., was no longer conducting business, and had no president, it is clear that the declaratory judgment action was improperly styled.

reclamation fees and to assign *"pro tanto subrogation rights."* The settlement agreement expressly assigned the United States' right to pursue collection of the reclamation fees and interest detailed in an exhibit attached to the settlement agreement. The pertinent fees and interest were identified in the attachment as follows: [3]

| Company | Contractor | MSHA NO. | Calendar Quarters | Principal Fee | Interest |
|---|---|---|---|---|---|
| Red River Coal Co. | Manning Coal # 1 | 4405676–01–S | 3/1981–2/1982 | 27,534.20 | |
| Red River Coal Co. | Manning Coal # 2 | 4405773–01–S | 4/1981–4/1983 | 116,199.98 | 25,879.39 |
| Red River Coal Co. | Manning Coal # 3 | 4405963–01–S | 2/1983 | 2,369.13 | |
| Red River Coal Co. | Manning Coal # 4 | 4405983–01–S | 3/1983–1/1984 | 13,008.21 | |
| | | TOTALS | | 159,111.52 | 25,879.39 |

Following execution of the settlement agreement, the fees and interest were paid, and the declaratory judgment action, including the United States' counterclaim for unpaid fees, penalties, and interest, was dismissed with prejudice.

## I.

The June 1981 and August 1983 contracts called for Manning Coal "to pay all severance or any other taxes of whatever kind levied against the coal which [was] mined and removed from the designated area[s]." Mine reclamation fees are taxes, and even if there were any ambiguity in Manning Coal's obligations, the evidence clearly demonstrates that the parties intended Manning Coal to pay the reclamation fees during the June 1981—December 1983 period. Furthermore, Red River, Inc.'s October 1985 proposal to Manning Coal, which Manning signed as "accepted and agreed," required Manning Coal to repay the reclamation fees and was a separate enforceable contract supported by valuable consideration. Although there are some ambiguities in the proposal, the court finds from all the evidence that Red River, Inc. and Manning Coal intended for Manning Coal to reaffirm its obligation to pay unpaid mine reclamation fees in exchange for the right to mine on Red River, Inc.'s "Dogwood permit."

Manning Coal contends that its liability under the October 28, 1985, agreement is expressly conditioned upon Red River, Inc. being held liable in a "court of competent jurisdiction." Manning Coal maintains that because Red River, Inc. settled with the United States rather than being found liable, it has no obligation to pay under the contract. The court concludes, however, from the evidence, that the escrow provisions of the 1985 agreement were intended as additional means of enforcing Manning Coal's obligations under the earlier contracts. The escrow provisions were not intended to replace whatever legal remedies Red River, Inc. had because of Manning Coal's failure to pay reclamation fees. Furthermore, even if Manning Coal's current interpretation of the 1985 agreement were accepted by the court, that agreement expressly provides that "[n]othing contained in [the agreement] shall be construed ... to require Red River ... to follow any particular course of action and legal strategy or tactic or to take or do any futile act or course of conduct in its defense of the [claims by the United States]." It is undisputed that reclamation fees were not paid, and that Red River, Inc. was liable for those fees, together with penalties and interest. *See United States v. Rapoca Energy Co.,* 613 F.Supp. 1161 (W.D.Va.1985). Accordingly, the court finds that it would have been a "futile act"

**3.** Although the settlement agreement between Red River, Inc. and the United States shows the pertinent reclamation fees to be $159,111.52, the parties' stipulation provides that 454,446.82 tons of coal were mined under the two contracts. Based upon that stipulation, at 35¢ per ton, the total unpaid tax would be $159,056.38.

for Red River, Inc. to have litigated rather than settled those claims.

## II.

■ Manning Coal argues that "[t]here is no question that breach of the [June 1981 and August 1983] contracts occurred in 1981 and 1983." Manning Coal's April 12, 1991 Memorandum at 10. Therefore, according to Manning Coal, Red River, Inc. was required by the applicable five-year statute of limitations of Virginia Code § 8.01–246 to file suit before the end of 1988. Since this action was not commenced until February 1989, Manning Coal's argument continues, this action is barred. Manning Coal's argument is rejected, however, because the court has found that the parties entered into a valid, enforceable, written contract in 1985, and this action was commenced well within the five-year statute of limitations applicable to written contracts.

## III.

■ Manning Coal contends that Red River, Inc. has failed to prove "with a reasonable degree of specificity the amount due and owing." Manning Coal's April 12, 1991 Memorandum at 12. The court disagrees. As a result of Manning Coal's breach, Red River, Inc. was required to pay reclamation fees in the amount of $159,111.52. Red River, Inc. was not a mere volunteer in paying those fees, as it, in fact, owed them. In addition, Red River, Inc. paid $25,879.39 in interest on the fees arising from one of the mining operations. Although Manning Coal maintains that that amount resulted from an arbitrary allocation of interest, the court finds that it is interest reasonably calculated and related to principal reclamation fees due and owing.

## IV.

■ Manning is personally liable under the October 1985 written contract because he permitted Manning Coal, a foreign corporation, to transact business in Virginia without first obtaining a certificate of authority to do business in Virginia as required by Virginia Code § 13.1–119. Before it was repealed effective January 1, 1986, see 1985 Va.Acts ch. 522, that section provided in pertinent part as follows:

> If a foreign corporation transacts business in this state without a certificate of authority, its director, officers, and agents doing such business shall be jointly and severally liable for any contracts made or to be performed in this state and any torts committed in this state between the time when it began to transact business in this state and the date when it obtains a certificate of authority.

Manning contends he is not personally liable, although he has stipulated that Manning Coal is a Kentucky corporation with its principal place of business in Kentucky; that Manning Coal conducted and transacted the business of extracting and mining coal in Wise County, Virginia, from July of 1981 through December 31, 1983, without obtaining a certificate of authority; that he is the sole director of Manning Coal; and that he personally conducted Manning Coal's business in Virginia. Primarily, he contends that § 13.1–119 provided for personal liability only "for any contracts made or to be performed in this state and any torts committed in this state," and that Red River, Inc. is seeking to recover under its right of subrogation—not on a contract or for a tort. The court rejects Manning's contention, however, because the court has found that Manning Coal entered into the October 1985 contract, and that contract was to be performed in Virginia.

## V.

Finally, Manning Coal contends *res judicata* and collateral estoppel bar the United States' claim against it for penalties and interest because the United States' counterclaim against Red River, Inc. in the declaratory judgment action was dismissed with prejudice.[4] The Fourth Circuit recently endorsed *Citibank, N.A. v. Data Lease Financial Corp.*, 904 F.2d 1498 (11th Cir.

---

**4.** Based on its determination that *res judicata* bars the government's claim, the court finds it unnecessary to address the issue of collateral estoppel.

1990), wherein the Eleventh Circuit addressed in detail the preclusive effect of a dismissal with prejudice under Rule 41(a) on parties in privity with the parties to the dismissed action. *See Harrison v. Edison Bros. Apparel Stores, Inc.*, 924 F.2d 530, 534–35 (4th Cir.1991).

▮ *Res judicata* bars a claim when a court of competent jurisdiction has rendered a final judgment on the merits in a suit involving the same cause of action between the same parties, or those in privity with them. *Citibank*, 904 F.2d at 1501 (citing *I.A. Durbin, Inc. v. Jefferson Nat'l Bank*, 793 F.2d 1541, 1549 (11th Cir.1986)).⁵ The dismissal with prejudice of an action pursuant to Rule 41(a) is a final adjudication on the merits. *Citibank*, 904 F.2d at 1501. A case involves the same cause of action for *res judicata* purposes if it " 'arises out of the same nucleus of operative fact, or is based upon the same factual predicate, as a former action.' " *Id.* at 1503 (quoting *Ruple v. City of Vermillion, S.D.*, 714 F.2d 860, 861 (8th Cir.1983), *cert. denied*, 465 U.S. 1029, 104 S.Ct. 1290, 79 L.Ed.2d 692 (1984)). Also for purposes of *res judicata*, a person in privity is "a person so identified in interest with a party to former litigation that he represents precisely the same legal right in respect to the subject matter involved." *Nash County Bd. of Educ. v. Biltmore Co.*, 640 F.2d 484, 493 (4th Cir.), *cert. denied*, 454 U.S. 878, 102 S.Ct. 359, 70 L.Ed.2d 188 (1981) (quoting *Jefferson Sch. of Social Science v. Subversive Activities Controls Bd.*, 331 F.2d 76, 83 (D.C.Cir.1963)). Courts must determine whether a defendant's responsibility is derivative or secondary or whether the defendant's responsibility arises from concurrent or consecutive acts of two or more persons, in which case subsequent suits may be brought against the defendant. *Pelletier v. Zweifel*, 921 F.2d 1465, 1502 (11th Cir.1991); *Citibank*, 904 F.2d at 1502. Thus, when " 'the relations between two parties are analogous to that of principal and agent, the rule is that a judgment in favor of either, in an action brought by a

third party, rendered upon a ground equally applicable to both, is to be accepted as conclusive against the other.' " *Citibank*, 904 F.2d at 1503 (quoting *Spector v. El Ranco, Inc.*, 263 F.2d 143, 145 (9th Cir. 1959)).

In *Citibank*, the defendant, Data Lease, filed a counterclaim against the plaintiff, Citibank, and filed a third-party complaint against Citibank's directors. Data Lease contended that Citibank was vicariously liable for the misdeeds of Citibank's directors, whom Data Lease also claimed were individually liable. Data Lease entered into a settlement agreement with the directors dismissing the third-party claims with prejudice, but specifically preserving Data Lease's counterclaim against Citibank. After approving a stipulation reflecting the settlement agreement, the district court entered an order of dismissal under Rule 41(a)(1) that stated:

> The foregoing stipulation is approved, and all claims by Data Lease solely against the Directors (but not Citibank) as therein defined are dismissed with prejudice.

Having found the other elements of *res judicata* to have been satisfied, the court explained that the parties were in privity not "simply because Data Lease made identical claims against each of them," but rather because Citibank was vicariously liable for the acts of its agents, i.e. directors. *Citibank*, 904 F.2d at 1502. The court held that despite the parties' intent, as demonstrated by the express language in both the settlement agreement and the order of dismissal, the dismissal with prejudice of Citibank's agents was a final adjudication on the merits that had the legal effect of barring Data Lease's claim against Citibank. *Id.* at 1504. The court explained that although the parties' intent may have prevented collateral estoppel, their intent did not eliminate the *res judicata* effect in favor of Citibank of the dismissal against the directors because Data Lease could not proceed against Citibank on the basis of

---

**5.** "[F]ederal law defines the preclusive effect of a Rule 41(a) dismissal" because the construction of a federal rule is involved. *Citibank*, 904 F.2d at 1501.

vicarious liability once the director's liability had been extinguished. *Id.*

 Here, the court entered an agreed order dated December 28, 1988, dismissing with prejudice Red River, Inc.'s declaratory judgment action and the United States' counterclaim for reclamation fees, penalties, and interest. Because the court had personal and subject matter jurisdiction, the dismissal with prejudice was a final judgment on the merits. *See Citibank,* 904 F.2d at 1501–02. The United States' counterclaim against Red River, Inc. in the declaratory judgment action and its present claim in intervention against Manning Coal are both based on the same cause of action. Both causes of action center upon the recovery of the unpaid reclamation fees, interest, and penalties pursuant to 30 U.S.C. § 1232, which arose from the single act of mining coal on Red River, Inc.'s property.

Finally, the court finds that the relationship of Manning Coal and Red River, Inc. is analogous to a principal-agent relationship and that they are in privity. Through their contractual relationship, Red River, Inc. and Manning Coal were mutually involved in the mining of Red River, Inc.'s coal. Manning Coal performed the actual mining of the coal and Red River, Inc.'s liability under the Surface Mining Control and Reclamation Act was predicated on those mining activities. Though the United States and Red River, Inc. did not intend to release Manning Coal from liability to the United States for the unpaid penalties and interest, that intent has no bearing on the claim preclusive effect of the dismissal with prejudice. *See Citibank,* 904 F.2d at 1503–05. The court, therefore, finds that the elements of *res judicata* are present and warrant the necessary, but in the court's view undesirable, result of barring the government's claim against Manning Coal for interest and penalties.

### VI.

For the reasons stated above, judgment will be entered for plaintiff, Red River, Inc.

and against defendants, Manning Coal and Manning in the amount of $184,935.77 with interest, and judgment will be entered in favor of Manning Coal and against the United States.[6]

---

6. Because the court has found Manning Coal liable under the contract, and has found that that claim is not barred by the statute of limitations, the court finds it unnecessary to determine Red River, Inc.'s rights of subrogation or whether those rights are barred by the statute of limitations. The court also finds it unnecessary to reach the question of whether Red River, Inc. has a right of contribution or indemnification arising under federal law with jurisdiction pursuant to 28 U.S.C. § 1331.