977 F.2d 117
 61 USLW 2213
 UNITED STATES of America, Plaintiff-Appellant,
and
Red River Coal Company, Incorporated, Plaintiff,
v.
MANNING COAL CORPORATION; Kenneth Manning, Defendants-Appellees.
RED RIVER COAL COMPANY, INCORPORATED, Plaintiff-Appellee,
v.
MANNING COAL CORPORATION;
Kenneth Manning, Defendants-Appellants,
and
United States of America, Defendant.
 Nos. 92-1110, 92-1148.
 United States Court of Appeals,
Fourth Circuit.
 Argued July 9, 1992.
Decided Sept. 30, 1992.
As Amended Jan. 20, 1993.
 
 Jacques B. Gelin, U.S. Dept. of Justice, Washington, D.C., Elsey A. Harris, III, Mullins, Thomason & Harris, Norton, Va., argued (Barry M. Hartman, Acting Asst. Atty. Gen., Dirk D. Snel, U.S. Dept. of Justice, Washington, D.C., E. Montgomery Tucker, U.S. Atty., Roanoke, Va., Mark E. Siegel, Sp. Asst. U.S. Atty., Knoxville, Tenn., Frank Conforti, Asst. Sol., Dept. of Interior, Washington, D.C., Scott W. Mullins, Coeburn, Va., on brief), for appellants.
 William J. Sturgill, Sturgill & Stewart, Norton, Va., argued, for appellee.
 Before WILKINSON, WILKINS, and LUTTIG, Circuit Judges.
 OPINION
 WILKINSON, Circuit Judge:
 
 
 1
 We have before us consolidated appeals which bear upon the administration of the Surface Mining Control and Reclamation Act (the "SMCRA"), 30 U.S.C. §§ 1201 et seq. We must initially interpret a contract in which Manning Coal Corporation promised to reimburse Red River Coal Company for its liability to the United States on SMCRA reclamation fees which Manning Coal and Red River mutually owed. Red River settled with the government. The district court held that the contract obligated Manning Coal to pay Red River for this settlement, because the contract did not require Red River to "do any futile act" in the course of its defense. 780 F.Supp. 378. We affirm the district court.
 
 
 2
 We must next determine the preclusive effect of this same settlement. Under the settlement, Red River paid only the principal on the statutory fees, and the government's claims against Red River were dismissed with prejudice. The government then sought to recover the interest, penalties, and administrative costs on those same fees from Manning Coal. The district court held, however, that the dismissal was res judicata as to the government's claim, on the ground that Red River and Manning Coal were in privity. We think the district court's ruling misconstrues traditional principles of preclusion and compromises important principles in the SMCRA. We thus reverse this part of the judgment.
 
 I.
 
 3
 On June 25, 1981, Manning Coal Corporation contracted with Red River Coal Company to mine coal from lands owned by Red River. On August 1, 1983, Manning Coal signed a similar contract with a group of coal companies, to which Red River belonged, called the Humphreys Group. The members of the Group later assigned their interest in this contract to Red River. In both of these contracts, Manning Coal agreed to pay all taxes levied against the coal which it mined, including reclamation fees of 35 cents per ton imposed by the Surface Mining Control and Reclamation Act. 30 U.S.C. § 1232(a). Between June 1981 and December 1983, Manning Coal mined over 450,000 tons of coal on these contracts, but it paid no SMCRA reclamation fees.
 
 
 4
 In January of 1985, Red River sued the United States for a declaratory judgment that it did not owe the United States any SMCRA reclamation fees on the coal mined by its contractors. The United States responded by filing a counterclaim for those fees. Meanwhile, on October 28, 1985, Manning Coal and Red River entered into another contract. Red River agreed to let Manning Coal mine coal on certain other lands which Red River owned. In exchange, Manning Coal agreed to let Red River deduct 50 cents per ton from Manning Coal's fee for the mined coal, to be accumulated in an interest-bearing escrow account. In the event Red River was found liable for fees, penalties, or interest in connection with the mining operation, the escrow funds would "be disbursed to pay the claiming third party."
 
 
 5
 On December 28, 1988, Red River settled the government's counterclaim. Under the settlement, Red River paid the government nearly $185,000 in reclamation fees on coal that had been mined by Manning: $159,000 in principal, plus $26,000, which was a portion of the interest assessed to overdue fees on that coal. In exchange, the government assigned Red River its right to collect the $185,000 from Manning Coal itself. The district court accordingly dismissed the government's claim with prejudice.
 
 
 6
 On February 1, 1989, Red River sued Manning Coal for the amount of the settlement. The district court awarded Red River its claim on the basis of the October 1985 contract, which stated that Red River was not required "to follow any particular course of action in legal strategy or tactics or to take or do any futile act or course of conduct in its defense of the third party claims." The court reasoned that Red River was clearly liable to the government for the reclamation fees, and that a litigated defense would therefore have been futile. Thus the court held that Manning Coal owed Red River the cost of the settlement.
 
 
 7
 In that same action, the United States had intervened to claim another $114,000 from Manning Coal, which represented the remaining interest, penalties, and administrative costs for the overdue reclamation fees on the coal mined by Manning. The district court denied this claim. It found that Manning Coal and Red River had a principal-agent-type relationship, such that they were in privity with each other during the earlier litigation. The court thus held that the dismissal with prejudice of the government's earlier claim against Red River was res judicata as to its present claim against Manning Coal.
 
 
 8
 Manning Coal has appealed the first judgment in favor of Red River, and the government has appealed the second judgment in favor of Manning Coal.
 
 II.
 
 9
 We address Manning Coal's appeal first. Manning Coal argues that the district court erred in reading the 1985 contract to require Manning Coal to cover any obligation incurred by Red River as a result of settlement. Reading the contract as a whole, we think the district court's interpretation was correct.
 
 
 10
 It has long been clear that the law favors settlement. Eggleston v. Crump, 150 Va. 414, 143 S.E. 688, 689 (1928). While a court cannot impose this or any other policy upon the parties to a contract, neither should it hasten to construe contractual language to require the expenditure of resources in pointless litigation. Red River and Manning Coal anticipated the possibility of settlement when they agreed that nothing in their contract "shall be construed as to require Red River ... to follow any particular course of action in legal strategy or tactics or to take or do any futile act or course of conduct in its defense of the third party claims." The district court found that Red River's position against the government was a meritless one, because of precedent clearly holding mine land owners liable for SMCRA reclamation fees. See United States v. Rapoca Energy Co., 613 F.Supp. 1161 (W.D.Va.1985). We can think of no better example of a "futile act" than litigating a losing claim to the death, rather than settling the matter.
 
 
 11
 Manning Coal counters that it was responsible only if "Red River or any of its affiliates [were] found liable by any court of competent jurisdiction" for the fees and monies at issue. This language, however, cannot be read in isolation, but must be considered in light of the entire contract, including the "no futile act" clause discussed above. The entire purpose of the October 1985 agreement was to reaffirm Manning Coal's prior contractual obligation to pay the reclamation fees on the mined land: the second paragraph stated that "[the reclamation] fees, by contract, were to be the responsibility of [Manning Coal,] and coal purchased in the past by Red River, or its affiliates, from Manning was priced on that assumption." Indeed, the district court expressly noted that the June 1981 and August 1983 contracts between these same parties called for Manning to pay all the taxes and fees on the mined coal, and that the October 1985 agreement was intended to sustain, not supersede, this understanding. Read in light of this purpose, the contract imposes upon Manning the obligation to pay reclamation fees on the mined coal, the amount of which is not in dispute here. It is immaterial whether that amount was assessed in a judgment or reached in a settlement when further litigation was obviously futile. On this point, we affirm the district court.*
 
 III.
 
 12
 The government also appeals the district court's decision to assign preclusive effect to the earlier dismissal of its counterclaim against Red River. As a general matter, res judicata
 
 
 13
 provides that when a court of competent jurisdiction has entered a final judgment on the merits of a cause of action, the parties to the suit and their privies are thereafter bound "not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose."Commissioner v. Sunnen, 333 U.S. 591, 597, 68 S.Ct. 715, 719, 92 L.Ed. 898 (1948) (quoting Cromwell v. County of Sac, 94 U.S. 351, 352, 24 L.Ed. 195 (1877)) (emphasis added). Because there is no dispute that the other requirements for res judicata are met here, we limit our analysis to the question of privity.
 
 
 14
 Manning Coal argues that it was in privity with Red River by virtue of their contractual relationship. The district court agreed, finding that this relationship was "analogous to a principal-agent relationship," which may in appropriate circumstances satisfy the requirements for privity. See Harrison v. Edison Bros. Apparel Stores, Inc., 924 F.2d 530 (4th Cir.1991). The government responds by observing that Red River and Manning Coal were jointly and severally liable under the SMCRA, and argues that this joint liability precludes any finding of privity.
 
 
 15
 We think this latter view correct. To begin with, privity is no talismanic concept. "Privity states no reason for including or excluding one from the estoppel of a judgment. It is merely a word used to say that the relationship between the one who is a party on the record and another is close enough to include that other within the res judicata." Bruszewski v. United States, 181 F.2d 419, 423 (3d Cir.1950) (Goodrich, J., concurring). It is hardly consistent for Manning Coal to assert that it was in privity with Red River when in the consolidated appeal it complained loudly that Red River had failed to advance its interests in the earlier litigation with the government.
 
 
 16
 The government's view must also prevail because it takes into account how the regulatory scheme under the Surface Mining Control and Reclamation Act affects the operation of res judicata. It bears emphasis that res judicata is not natural law; it is common law. Congress can change it, within broad constitutional boundaries, as state legislatures have done for years. See, e.g., 1979 Va. Acts ch. 697, codified at Va.Code Ann. § 8.01-35.1 (Michie 1992) (rescinding the common law rule that the release of one joint tortfeasor releases all). Courts should therefore be hesitant to interpose a view of preclusion that is wholly at odds with the purposes of a statutory scheme. In pursuit of its aim of protecting the environment from the adverse effects of surface coal mining operations, the SMCRA provides that "[a]ll operators of coal mining operations" should pay fees to help reclaim mined lands. Section 402(a), 30 U.S.C. § 1232(a). Section 701(13) further defines "operator" to include anyone "engaged in coal mining who removes or intends to remove more than two hundred and fifty tons of coal from the earth by coal mining within twelve consecutive calendar months in any one location." 30 U.S.C. § 1291(13). The Department of the Interior has consistently interpreted "operator" in these two provisions to include both mining contractors and landowners, see 46 Fed.Reg. 60780 (Dec. 11, 1981), 42 Fed.Reg. 62713 (Dec. 13, 1977), and has declared them to be jointly and severally liable for SMCRA reclamation fees. 49 Fed.Reg. 31412 (Aug. 7, 1984).
 
 
 17
 It would confound the administration of the Act to hold, for purposes of preclusion, that jointly and severally liable parties like Red River and Manning are in privity. Certainly nothing in the case law compels that result. In Bigelow v. Old Dominion Copper Co., 225 U.S. 111, 32 S.Ct. 641, 56 L.Ed. 1009 (1912), the Old Dominion Copper Company had sued the two promoters who had formed the Company for selling their mining properties to Old Dominion at a profit. Old Dominion had sued one of the promoters, a Mr. Lewisohn, in federal court, and the other, a Mr. Bigelow, in state court--both for breach of fiduciary duty. Old Dominion's federal court claim against Mr. Lewisohn was dismissed, and Mr. Bigelow sought to use that judgment as res judicata against the state court claim. The Supreme Court held that Mr. Bigelow was not in privity with Mr. Lewisohn, because "the failure to recover against one of two joint tort-feasors is not a bar to a suit against the other upon the same facts." Id. at 129, 32 S.Ct. at 643.
 
 
 18
 More recently, in Tavery v. United States, 897 F.2d 1032 (1990), the Tenth Circuit reached the same conclusion. In Tavery, the IRS had issued separate notices of deficiency to a husband and a wife on their joint tax return, and the spouses had each challenged their deficiencies in separate lawsuits. In the husband's challenge, the Tax Court had disallowed a deduction for charitable contributions. The government sought to assert that judgment as res judicata against the wife's claim in the district court for the same deduction. The Tenth Circuit, however, denied res judicata, on the ground that the husband and wife were jointly and severally liable for the taxes due on their joint returns. "[C]laims against joint obligors," the court noted, "are generally regarded as separate and distinct for res judicata purposes." Id. at 1033 (citing Restatement (Second) of Judgments § 49 & comment a (1982)).
 
 
 19
 In Tavery, the court's finding of no privity disadvantaged the government, because it did not allow the IRS to assert the Tax Court judgment against the wife. The principle, however, is one that cuts both ways. The essence of joint and several liability is that a creditor, including the government, "may sue one or more of the parties to such liability separately, or all of them together at his option." Tavery, 897 F.2d at 1034 (quoting Black's Law Dictionary 751 (5th ed.1979)). We believe, therefore, that the SMCRA allows the Department of the Interior to pursue the mineral owner and the mining contractor in separate lawsuits. It is important to the administration of the Act that statutory operators such as Manning Coal and Red River may be held jointly and severally liable for reclamation fees, and that Manning's liability be separate and independent from Red River's--not derivative. The claim of the United States against Manning Coal for the balance of the reclamation fees is thus not barred by the doctrine of res judicata. In so holding, we reverse the judgment of the district court and remand for further proceedings consistent with this opinion.
 
 
 20
 AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.
 
 
 
 *
 We also find unpersuasive Manning Coal's challenge to the amount of interest charged against it. Finally, we see no reason to question the district court's finding that Kenneth Manning did not have a Certificate of Authority to transact business in Virginia, and was thus personally liable on the 1985 contract