**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

BURLINGTON INDUSTRIES, INC.,
Plaintiff-Appellant,

v.

No. 95-2686

PALMETTO SPINNING CORPORATION;
MARTIN COLOR-FI, INCORPORATED,
Defendants-Appellees.

Appeal from the United States District Court
for the District of South Carolina, at Greenville.
G. Ross Anderson, Jr., District Judge.
(CA-95-1467-6-3)

Argued: December 6, 1995

Decided: January 31, 1996

Before WILKINSON and WILLIAMS, Circuit Judges, and
THORNBURG, United States District Judge for the Western
District of North Carolina, sitting by designation.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** George Kermit Lyall, NELSON, MULLINS, RILEY &
SCARBOROUGH, L.L.P., Greenville, South Carolina, for Appellant.
Gregory Wilkerson Anderson, General Counsel, MARTIN COLOR-
FI, INC., Edgefield, South Carolina, for Appellees. **ON BRIEF:**
A.M. Quattlebaum, Jr., NELSON, MULLINS, RILEY & SCARBOR-
OUGH, L.L.P., Greenville, South Carolina, for Appellant.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Burlington Industries, Inc., appeals from the denial of its request for a preliminary injunction in its trade secret misappropriation suit against Palmetto Spinning Corp. and Martin Color-Fi, Inc. For the reasons stated below, we affirm the decision of the district court.

I.

From 1989 to 1991, Burlington Industries, Inc., developed a machine, known as the Spectra machine, for manufacturing space dyed yarn to be used in area rugs. Burlington considered the Spectra machine to be a trade secret, and treated it as such. In late 1991, three former employees of Burlington formed a corporation known as Bobby Vinson & Associates, Inc. (BVA), which began manufacturing space dyed yarn machines in 1992. While a Burlington employee, Bobby Vinson had participated in the design and development of the Spectra process.

In early May 1993, Burlington notified Vinson of its trade secret claim related to the Spectra machine. On April 26, 1993, Palmetto ordered one of the BVA machines, and this machine was delivered to Palmetto's South Carolina facility on June 25, 1993. **1**

On August 25, 1993, Burlington filed suit in the U. S. District Court for the Eastern District of Arkansas against Vinson, BVA, and others not a party to this litigation, alleging misappropriation of trade secrets. Neither Palmetto nor Color-Fi was named a party to this action.

_____

**1** Martin Color-Fi, Inc. purchased Palmetto in June 1994, and the machine at issue in this case was part of this purchase.

Vinson, in his individual capacity,[2] entered into a Consent Decree, admitting that the machines built and sold by BVA were substantially identical to the Spectra machine, that he learned of the technology for such machines while employed with Burlington, and that he consented to be permanently enjoined from the further use or sale of such technology or machines.

The U.S. District Court for the Eastern District of Arkansas entered an order on September 22, 1994, holding that the process used in the Spectra machine was a trade secret and that BVA's machines constituted the misappropriation of Burlington's trade secret. The court also enjoined the defendant parties from further use of the trade secret.

On May 11, 1995, Burlington commenced the present action against Palmetto and Color-Fi in the U. S. District Court for the District of South Carolina. The action alleges the misappropriation of trade secrets in violation of South Carolina's Uniform Trade Secrets Act, S.C. Code Ann. § 39-8-1 et seq., seeks a preliminary injunction, and asks for an accounting. The district court denied the motion for a preliminary injunction, and subsequently denied Burlington's motion for reconsideration. By written order, the district court also determined that the appellees were not estopped from litigating whether their machine is a trade secret of Burlington, and that there was a question of fact as to whether the machine owned by Palmetto was substantially similar to any machine produced by United Textile Machine Company (UTMC), successor corporation to the three former Burlington employees' interests. Burlington then appealed to this court.

_____

**2** Contrary to the appellees' assertion, this Consent Order was entered into by Vinson individually, and not by BVA. BVA presumably was not addressed in the Arkansas court's order of September 22, 1994, for the reason that BVA no longer existed at that time, not because it had entered the March 22, 1994, Consent Order along with Vinson. Instead, the only corporate defendant addressed by the Arkansas court's order of September 22, 1994, was United Textile Machine Company, the successor company to BVA.

II.

Under S.C. Code Ann. § 39-8-2(a), the actual or threatened misappropriation of a trade secret may be enjoined. As a prerequisite to obtaining an injunction under this section, Burlington must demonstrate that the machine at issue in this case is a Burlington trade secret.

A.

Burlington first asserts that Palmetto and Color-Fi are collaterally estopped from arguing that Palmetto's machine is not a Burlington trade secret by virtue of the September 22, 1994, order of the Arkansas court. Under the doctrine of collateral estoppel, once a final judgment on the merits has been reached in a prior claim, the relitigation of those issues actually and necessarily litigated and determined in the first suit are precluded as to the parties and their privies in any subsequent action based upon a different claim. Richburg v. Baughman, 351 S.E.2d 164, 166 (S.C. 1986). In the present case, it is clear that neither Palmetto nor Color-Fi was a party to the Arkansas litigation. Instead, the Court must focus upon whether Palmetto or Color-Fi was in privity with BVA/UTMC, which was a party to the Arkansas litigation.

"Privity," when applied to a judgment or decree, means one so identified with another that he represents the same legal right. Richburg, 351 S.E.2d at 166. However, as this Court has recognized, "privity" is merely a word used to say that the relationship between the one who is a party on the record and another who is not is close enough to include that other within a previous judgment's preclusive effect. United States v. Manning Coal Corp., 977 F.2d 117, 121 (4th Cir. 1992). Each case depends on its particular facts. H.G. Hall Constr. Co. v. J.E.P. Enterprises, 321 S.E.2d 267, 271 (S.C. App. 1984).

Privity in the context of res judicata or collateral estoppel does not embrace relationships between persons or entities, but rather deals with a person's relationship to the subject matter of the litigation. Richburg, 351 S.E.2d at 166. Under this rule,"privity" means that the respective parties have a mutual or successive relationship to the same rights of property. Wyndham v. Lewis, 354 S.E.2d 578, 579 (S.C.

4

App. 1987); see also 1B James W. Moore et al., <u>Moore's Federal Practice</u> ¶ 0.411[1] (2d ed. 1995). In the present case, our inquiry concerns whether Palmetto's successive relationship to the machine it purchased from BVA is a sufficient basis for finding that Palmetto was in privity with BVA and UTMC, and should be bound by the result of the Arkansas litigation.

While this Court declines to adopt a specific rule stating that a judgment rendered against the predecessor in a successive relationship is conclusive of the rights of the successor only when the transfer takes place after the commencement of the suit against the predecessor, the Court places great weight on the fact that Palmetto's machine was ordered and delivered before Burlington initiated the Arkansas litigation against BVA and UTMC. <u>See generally Johnson & Johnson v. Coopervision, Inc.</u>, 720 F. Supp. 1116, 1124 (D. Del. 1989); <u>Teleprompter Corp. v. Polinsky</u>, 447 F. Supp. 53, 56 n.5 (S.D.N.Y. 1977); <u>MPL, Inc. v. Cook</u>, 90 F.R.D. 570, 572-73 (N.D. Ill. 1981); <u>Buie v. Waters</u>, 74 S.E.2d 883, 885 (Ga. 1953); <u>Smith v. Smith</u>, 431 S.E.2d 196, 198 (N.C. 1993); <u>Wolverton v. Holcomb</u>, 329 S.E.2d 885, 888 (W. Va. 1985); <u>Moore's Federal Practice</u>¶ 0.411[1]. While Burlington asserts that Palmetto knew it was about to sue BVA, this is an insufficient basis for finding that Palmetto was in privity with BVA or UTMC under the facts of this case. It is also worthy of note that Burlington did not file the present suit until almost three years after delivery of the BVA machine to Palmetto.

We find that Palmetto and Color-Fi are not collaterally estopped from litigating whether their machine is a Burlington trade secret.

B.

Second, Burlington argues that, in the absence of estoppel, the evidence on the record nonetheless demonstrates that Palmetto's machine was a Burlington trade secret. However, after reviewing the record, this Court holds that the district court was not in error in determining that there was insufficient evidence to conclude at such an early stage in the litigation that Palmetto's machine was a trade secret as defined in S.C. Code Ann. § 39-8-1(4). Indeed, in argument before this Court, it was clear that the issue is seriously contested by appellees.

5

III.

Finally, we address Burlington's contention that it is entitled to a preliminary injunction.

Entitlement to injunctive relief is governed by Rule 65(a) of the Federal Rules of Civil Procedure.

> In this circuit, determining whether a preliminary injunction should be granted requires the consideration of four factors. These factors are: 1) the likelihood of irreparable harm to the plaintiff if the preliminary injunction is not granted; 2) the likelihood of harm to the defendant if the preliminary injunction is granted; 3) the likelihood that plaintiff will succeed on the merits; and 4) the public interest. Blackwelder Furniture Co. v. Seilig Manufacturing Co., Inc., 550 F.2d 189, 195-96 (4th Cir. 1977). These factors are not, however, all weighted equally. The "balance of hardships" reached by comparing the relevant harms to the plaintiff and defendant is the most important determination, dictating, for example, how strong a likelihood of success showing the plaintiff must make. See Rum Creek Coal Sales, Inc. v. Caperton, 926 F.2d 353, 359 (4th Cir. 1991). Additionally, while the factors articulated in Blackwelder guide the district court's judgment on a preliminary injunction motion, the decision to grant or deny relief lies within that court's sound discretion and will not be set aside absent an abuse of discretion. Id. at 358.

Hughes Network Systems v. Interdigital Com. Corp ., 17 F.3d 691, 693 (4th Cir. 1994).

The first two factors are the most important. Only if the first two factors "`tip[ ] decidedly' in favor of the plaintiff" is it entitled to injunctive relief. Direx Israel, Ltd. v. Breakthrough Medical Corp., 952 F.2d 802, 813 (4th Cir. 1991) (citations omitted).

It is clear that the district court properly considered the factors set forth in Hughes, weighed the likelihood of irreparable harm to Bur-

lington against the likelihood of harm to Palmetto and Color-Fi, and determined that Burlington had failed to show likelihood of irreparable harm or, in fact, harm at all. The court further found that the issuance of an injunction would work significant harm on the appellees. As was appropriate, the court also addressed the appellant's likelihood of success on the merits and observed that any loss by Burlington attributable to Palmetto and Color-Fi could be readily ascertained as money damages. A review of the record provides full evidentiary support for the district court's ruling. Therefore, the decision of the district court is affirmed.

During the appeal, Burlington moved to seal the appellate record. At oral argument, the appellees did not oppose that motion which, therefore, is granted and the appellate record is sealed.

<u>AFFIRMED</u>

7